2021 IL App (1st) 192488-U
No. 1-19-2488

SECOND DIVISION
January 19, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JEFFREY S. REINICHE, DR. ARTHUR CHAUSMER, and GARY POST, derivatively on behalf of HEALTH ALLIANCE HOLDINGS, INC., derivatively on behalf of HA HOLDINGS, INC., | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) ) | Nos. 13 CH 5368 consolidated with 18 L 1933 |
| Plaintiffs, | ) ) | |
| v. | ) ) | The Honorable Pamela McLean Meyerson, |
| ANDREW M. PAUL, CURTIS LANE, KEVIN SWAN, JAMES KELLY, JAMIE MARTIN, MTS HEALTH ALLIANCE, LLC, ASHCROFT ASSOCIATES, LLC, ALLEN PALLES, JOHN HENNESSEY, E.B. MARTIN, JR., EBM VENTURES, LLC, HA ACQUISITION, LLC, HEALTH ALLIANCE HOLDINGS, INC., and HA HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) | Judge Presiding. |
| Defendants, | ) ) ) | |
| (R. Timothy Novel and Aronberg, Goldgehn, Davis & Garmisa, Petitioners-Appellees v. Mark Swift, Respondent-Appellant). | ) ) ) ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1  *Held:*  Where the law firm served the corporation's officers by certified mail, service of the attorney's lien was proper under the Attorneys Lien Act.  In addition, where the party opposing a petition for attorney's fees did not make a timely request for an evidentiary hearing and did not raise a factual issue that required the presentation of additional evidence to resolve, the trial court did not err in ruling on the petition for fees without an evidentiary hearing.

¶ 2  In 2004, the corporation Health Alliance Holdings, Inc. ("HAH") dissolved.  Thereafter, in 2013, shareholders of HAH filed a derivative suit.  Upon settlement of the derivative suit, the settlement funds were placed in escrow.  Respondent, Mark Swift, HAH's president, retained petitioners, R. Timothy Novel and Aronberg, Goldgehn, Davis & Garmisa ("AGDG") to represent him in the pursuit of his creditor claim to the settlement proceeds.  Thereafter, Novel and AGDG filed a notice of attorney's lien for fees owed to them by Swift.  Swift filed a motion to adjudicate that lien, which the trial court denied.  Novel and AGDG then filed a verified petition for attorney's fees, which the trial court granted, awarding them fees and costs in the amount of $45,577.57.  Swift appeals, arguing that the trial court erred in denying his motion to adjudicate the attorney's lien and in granting the petition for fees.  For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4  Given the voluminous nature of the record in the underlying dispute and the limited issues on appeal, we granted Swift's motion to limit the record on appeal to documents filed on or after January 1, 2019.  Accordingly, some of the undisputed background facts recited here are taken from the parties' briefs, but they are included solely for the purpose of providing background information and context.  In reviewing the issues on appeal, we consider only those facts supported by the record on appeal.

¶ 5  The underlying action consisted of a derivative suit filed by shareholders of HAH, which was dissolved in 2004.  Once a settlement was reached, the trial court ordered the shareholders'

attorney, Martin Oberman, to hold the settlement funds in escrow and established a procedure by which the shareholders and creditors could file claims to the settlement proceeds. Swift retained AGDG to represent him in pursuing his creditor claim to the settlement proceeds. His claim to the settlement proceeds was based on his assertion that he had fronted legal fees to and paid loans on behalf of HAH. On October 31, 2018, AGDG filed a notice of attorney's lien ("lien") "growing out of [Swift's] claims, rights, causes of action or interest in the proceeds of the settlement *** as a claimant or creditor of [HAH]" in the amount of "$31,962.20, which are currently due and owing with fees and costs continuing to accrue."

¶ 6 Swift later filed a "Motion to Adjudicate Attorney's Lien" in which he sought to have the lien declared invalid on the basis that AGDG did not serve HAH's registered agent with the lien or properly serve any officer of HAH with the lien. According to Swift, he, the president of HAH, was only served by email, and the only person served by certified mail was Ann Sickon, who was not an officer of HAH.

¶ 7 In response, AGDG argued that it did not need to serve HAH, because Swift's claim was not against HAH and because HAH was not holding the settlement proceeds. AGDG also argued that even if it was required to serve HAH, it properly did so by serving HAH officers Jeffrey Reiniche, Arthur Chausmer, and Gary Post by certified mail.

¶ 8 At the hearing on Swift's motion to adjudicate the lien, the parties maintained their written arguments, but Swift also contended that the Attorneys Lien Act ("Act") (770 ILCS 5/1 (West 2018)) applied only to contingency-fee arrangements and not to hourly agreements like the one between him and AGDG. This argument was not raised in Swift's written filings on the motion to adjudicate the lien. The trial court ultimately denied Swift's motion to adjudicate the lien,

concluding that AGDG was required to serve HAH, but did so through service on HAH's officers, Reiniche, Chausmer, and Post.

¶ 9        A couple of months after the trial court denied Swift's motion to adjudicate the lien, AGDG and Novel, the AGDG attorney who primarily handled Swift's representation, filed a verified petition for attorney's fees. In that petition, AGDG and Novel alleged that Swift had an outstanding balance of $47,011.07 in attorney's fees and costs for their representation of Swift between March and December 2018. The petition purported to include a detailed itemization of the attorney's fees and the time incurred, but it is not included in the record. A footnote in the petition stated that the itemization was tendered to Swift's counsel and the trial court but was not filed. There is no contention by Swift that this itemization was not provided to him and the trial court.

¶ 10       In his response to the petition, Swift argued that Novel held himself out as "of counsel" at AGDG, the charged hourly rates were excessive, and his retainer of $5,000 was not properly applied. He also denied that Novel was an experienced litigator and that he had an outstanding balance of $47,011.07. Swift attached to his response an article from the Illinois Bar Journal, which Swift contended identified categories of fees that are "unacceptable." According to Swift, AGDG and Novel's itemization of fees contained charges that were improper, per the attached article, namely the following:

> "extensive 'review,' preparation for entering continuance orders, preparation for routine court appearances, excessive emails, review of court orders, review and revisions of motions, file reviews, charges to the client for drafting a self-serving attorney lien and other associated charges thereto, drafting of routine documents which should be overhead as

opposed to an attorney drafting a notice and other similar charges all prohibited or criticized in numerous cases."

Swift asserted that a jury would reduce the claimed charges by at least 50% to no more than $20,000.

¶ 11    In addition to his written response to the fee petition, Swift also filed a "Motion to Set Jury Trial." In that motion, Swift asserted that because AGDG and Novel's claim for attorney's fees was based on a fee agreement between the parties, the claim was essentially one for breach of contract. Therefore, Swift reasoned, he had a constitutional right to a jury trial.

¶ 12    At an October 2019 hearing on Swift's motion to set a jury trial, after hearing arguments by the parties, the trial court denied the motion, noting that Swift had filed his motion to adjudicate the lien in March 2019 and that at no point during those proceedings or in the proceedings in anticipation of the filing of the fee petition did Swift indicate that he wanted a jury trial. In addition, with respect to AGDG and Novel's fee petition, the trial court stated that it needed to determine whether an evidentiary hearing was necessary on the petition, but that at the next status date, it would either rule on the fee petition or give the parties a date for a ruling.

¶ 13    At the next status hearing, on November 4, 2019, the trial court stated that it had reviewed the briefing on the fee petition to determine whether an evidentiary hearing was necessary. Noting that courts routinely assess the reasonableness of fees based solely on written fee petitions and objections, the trial court concluded that it did not believe an evidentiary hearing was necessary on AGDG and Novel's fee petition. Only after the trial court announced its decision that an evidentiary hearing was not necessary, counsel for Swift stated for the first time that she believed an evidentiary hearing was necessary. The trial court noted counsel's position and advised the parties that it would inform them when it had issued a written decision on the fee petition.

¶ 14    Two days later, the trial court issued its written decision on the fee petition. In that order, the trial court noted that it had previously denied Swift's motion for a jury trial on the basis that he had waived any right to a jury trial he might have by not requesting it sooner. The trial court then went on to address each of the contentions Swift raised in response to the fee petition. First, with respect to his contention that Novel was "of counsel" to AGDG, the trial court stated that the engagement letter signed by Novel and Swift demonstrated that Swift retained AGDG to represent him and agreed that Novel would have primary responsibility for his case. In addition, the trial court concluded that the submitted invoices reflected that Swift's $5,000 retainer was properly applied against the incurred fees. As for Swift's argument that the hourly rates charged were excessive and that Novel and AGDG billed time for improper matters, the trial court noted that it had presided over the case during the entire time that AGDG represented Swift and, thus, did not need to conduct an evidentiary hearing to determine whether the charged fees were reasonable. The trial court stated that it reviewed the charged fees in light of the following factors: the skill and standing of the attorneys, the nature of the case, novelty and complexity of the issues involved, the degree of responsibility required, the usual and customary charge for such services in the community, and whether there existed a reasonable connection between the charged fees and the litigation. Using those factors, the trial court concluded that the charged rates were reasonable. The trial court subtracted $1,433.50 in claimed fees on the basis that they related to work performed on the preparation of the attorney lien and AGDG's motion to withdraw, tasks that furthered AGDG's interests more than they furthered Swift's interests. Taking into account those reductions, the trial court awarded Novel and AGDG a total of $45,577.57 in attorney's fees and costs.

¶ 15    Swift then instituted this appeal.

¶ 16                                    ANALYSIS

¶ 17    On appeal, Swift argues that the trial court erred in denying his motion to adjudicate the lien and in ruling on the fee petition without holding an evidentiary hearing. We address each of these contentions in turn and conclude that neither have merit.

¶ 18        Motion to Adjudicate Lien

¶ 19    Swift first contends that the trial court erred in denying his motion to adjudicate the lien, because (1) AGDG did not serve HAH's registered agent, (2) the Act applies only to contingency fee agreements, and (3) the lien was not filed until after a settlement in the underlying case had been reached. We address each of these contentions in turn.

¶ 20    First and primarily, Swift argues that the lien was not properly served on HAH because it was not served on HAH's registered agent. In support of this contention, Swift cites the Act, which provides as follows:

> "Attorneys at law shall have a lien upon all claims, demands and causes of action, *** which may be placed in their hands by their clients for suit or collection *** for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action, plus costs and expenses. ***
>
> To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action."

770 ILCS 5/1. Swift also cites the provision of the Illinois Code of Civil Procedure ("Code") that governs service on private corporations:

"A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals."

735 ILCS 5/2-204 (West 2018).

¶ 21    Despite Swift's contention to the contrary, neither of these statutory provisions require that the lien be served on HAH's[1] registered agent. The Act simply states that service must be made on the party against whom the attorney's client has the claims at issue; it does not specify how to effect that service in the specific context of a corporation. In addition, although section 2-204 of the Code indicates that service on a corporation *may* be made through its registered agent, it does not *mandate* that service be made on the registered agent. Swift does not cite any other authority in support of the proposition that service on the registered agent was required.

¶ 22    Swift also does not cite any authority that supports a conclusion that the trial court erred in finding that HAH was properly served by certified mail on its officers. Instead, the relevant authority clearly indicates that such service was proper. The Code permits service on a corporation by personal service or by any other means permitted by law. The Act, in turn, specifically permits service of the notice of the lien by certified mail. Although neither the Code nor the Act specifically states that certified mail service on a corporation may be made through the corporation's officers, we see no reason why corporations may be served through their officers by personal service but not by other means specifically allowed by law. Thus, we conclude that, taken together, these provisions permit for service of a notice of lien under the Act on a corporation by

---

[1] We note that in the trial court, the parties disputed whether HAH needed to be served in any capacity. That issue is not raised here on appeal, so we assume, without deciding, that service on HAH was required.

way of certified mail on its officers.  There is no dispute by the parties that Reiniche, Chausmer, and Post were officers of HAH, and the proof of service for the lien indicates that all three were served by certified mail on October 31, 2008.  Accordingly, we see no basis on which to conclude that the trial court erred in denying Swift's motion to adjudicate the lien in this respect.

¶ 23     Swift next contends that the lien was invalid because the Act applies only to contingency-fee agreements.  Notably, Swift did not raise this contention in his motion to adjudicate the lien or in his reply in support of the motion to adjudicate the lien; instead, he raised it only briefly at the hearing on the motion to adjudicate the lien.  Putting that fact aside, however, Swift's contention is not well taken.

¶ 24     Swift's basis for concluding that the Act applies only to contingency-fee agreements is the language in the Act that liens shall be "for the amount of any fee which may have been agreed upon by and between such attorneys and their clients."  According to Swift, contingency fees are agreed on, while hourly rates are not, as evidenced by the present dispute over the appropriate amount of fees.  We are not clear on why Swift believes that contingency fees are agreed on while hourly rates are not simply because the parties in this particular case dispute the precise amount of fees to be awarded.  In both a contingency-fee and an hourly-fee arrangement, the parties agree on how the fees are to be calculated: either as a percentage of the recovered amount or by multiplying an hourly rate by the number of hours worked.  In either situation, the precise amount of fees cannot be determined at the outset, but that does not mean that the parties have not agreed on the fee arrangement.

¶ 25     Swift also cites to following language in the Act:

> "In the case of a claim, demand, or cause of action with respect to which the total amount of all liens under the Health Care Services Lien Act meets or exceeds 40% of the sum paid

or due the injured person, the total amount of liens under this Act shall not exceed 30% of the sum paid or due the injured person. All attorneys shall share proportionate amounts within this statutory limitation."

770 ILCS 5/1. According to Swift, the references to percentages in this excerpt indicate that the Act applies only to contingency fees. We disagree.

¶ 26    First, by its own terms, the above-quoted language applies only to cases involving liens under the Health Care Services Lien Act (770 ILCS 23/1 et seq. (West 2018)), and there is no contention that the lien in this case was brought under that statute. Second, the quoted language simply places a limit on the amount of a lien that may be had by an attorney in such a case. The language does not in any respect imply or suggest that the Act applies only to contingency-fee agreements, and any contention to that effect is clearly baseless.

¶ 27    There is no language whatsoever in the Act that states, either explicitly or by implication, that the Act applies only to contingency-fee arrangements. In fact, the Act specifically states that a lien may be had for "any fee" agreed upon by the parties and that even in the absence of an agreement, an attorney is entitled to a lien for "a reasonable fee." Accordingly, Swift's contention that the trial court erred in failing to find the lien in this case invalid on the ground that the Act applies only to contingency fees is wholly without merit.

¶ 28    Finally, Swift argues that the lien was invalid because it was not filed until after settlement was reached in the underlying case. Swift has waived this contention by failing to raise it in the trial court. See *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 413 (2002) (concluding that an issue that was never raised in the trial court was waived on appeal). He has also waived this contention for failing to cite any authority or make any argument in support of it. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring that the argument section of appeals briefs "shall

contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 29                                         Fee Petition

¶ 30    Swift next argues that the trial court erred in awarding Novel and AGDG attorney's fees and costs without first holding an evidentiary hearing on their fee petition. He also argues that the trial court erred in awarding fees that exceeded the amount stated in the lien. This latter contention is waived, because Swift did not raise it in the trial court and did not cite any authority or make any argument in support of the contention. See *Robinson*, 201 Ill. 2d at 413 (concluding that an issue that was never raised in the trial court was waived on appeal); Ill. S. Ct. R. 341(h)(7) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis*, 391 Ill. App. 3d at 804 ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver.").

¶ 31    Swift's contention that the trial court erred in awarding attorney's fees without first conducting an evidentiary hearing, on the other hand, fails on the merits. Swift appears to believe that the trial court was required to hold an evidentiary hearing on the fee petition as a matter of course and that any award of attorney's fees without an evidentiary hearing is improper. We disagree.

¶ 32 Illinois does not require that evidentiary hearings be held on fee petitions as a matter of course. *Raintree Health care Center v. Illinois Human Rights Commission*, 173 Ill. 2d 469, 495 (1996) ("[C]ourts frequently award attorney fees without discovery by the party charged with paying them and without holding evidentiary hearings."); *3432 West Henderson Building, LLC v. Gizynski*, 2017 IL App (1st) 160588, ¶ 35 ("[T]rial courts faced with fee petitions are not required to hold evidentiary hearings as a matter of course."); *County Line Nurseries & Landscaping, Inc. v. Glencoe Park District*, 2015 IL App (1st) 143776, ¶ 46 (same). Rather, the weight of this state's authority indicates that evidentiary hearings are required on attorney's fee petitions only when a hearing is requested or where the party opposing the petition creates a factual issue that can only be resolved by an evidentiary hearing. See, *e.g.*, *U.S. Bank National Assoc. v. Randhurst Crossing LLC*, 2018 IL App (1st) 170348, ¶ 83 (stating that where the opposing party requests an evidentiary hearing on a fee petition, he is entitled to one, but noting that the party opposing the fee petition had not made any such request); *A.L. Dougherty Real Estate Management Company, LLC v. Tsai*, 2017 IL App (1st) 161949, ¶ 46 (evidentiary hearing required only when opposing party raises an issue of fact that requires further evidence for resolution); *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 113 ("[A] fee petition warrants an evidentiary hearing only when the response of the party to be charged with paying the award raises issues of fact that cannot be resolved without further evidence."); *County Line Nurseries*, 2015 IL App (1st) 143776, ¶ 46 (where the party opposing the fee petition did not request an evidentiary hearing or raise the necessity of an evidentiary hearing in response to the fee petition, its objection to the lack of an evidentiary hearing was forfeited).

¶ 33 Even the majority of the cases cited by Swift in support of his position involved situations where an evidentiary hearing had been requested or factual issues had been raised requiring

additional evidentiary proof. See *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1058 (2007) ("We believe that, generally, in protracted litigation involving multiple complex issues, an evidentiary hearing should be conducted *upon the request of the losing party*, especially if the prevailing party was represented by multiple attorneys—which may have resulted in duplicative charges—and where the prevailing party was entitled to fees and costs with respect to some claims, but not others." (Emphasis added.)); *Bank of America National Trust & Savings Association v. Schulson*, 305 Ill. App. 3d 941, 953 (1999) (concluding that an evidentiary hearing was necessary where the defendants "presented detailed objections to the fee petition and a written request for a hearing" and noting that when the objecting party requests a hearing, he is entitled to one); *Lasday v. Weiner*, 273 Ill. App. 3d 461, 468 (1995) (evidentiary hearing appropriate where documents submitted in support of fee petition were vague in that they only included a total number of hours worked by an individual on a particular day with a general description of the tasks performed and did not detail the nature of the work performed, how they related to the litigation, and whether they were necessary); *In re Marriage of Pitulla*, 141 Ill. App. 3d 956, 961 (1986) (evidentiary hearing required where the attorney refused to provide an itemized statement of services supporting claimed fees); *Burks v. Burks*, 100 Ill. App. 3d 700, 706 (1981) (concluding it was error for the trial court not to hold an evidentiary hearing because the party opposing the fee petition had requested a hearing); *People ex rel. Holland v. DeMichael*, 79 Ill. App. 3d 974, 981-82 (1979) (evidentiary hearing was required where party requested hearing and the only evidence of fees was the attorney's unsworn oral arguments).

¶ 34    Trial courts, especially those who have presided over the matter from the beginning, are competent to assess the reasonableness of fees without an evidentiary hearing. See *U.S. Bank*, 2018 IL App (1st) 170348, ¶ 82 (observing that in making an award of attorney's fees, the trial

court may use its own knowledge and experience to assess the amount of time necessary to complete particular activities); *Williams v. American Country Insurance Co.*, 359 Ill. App. 3d 128, 142 (2005) (rejecting the contention that the trial court was required to hold an evidentiary hearing on the reasonableness of attorney's fees where the trial court had presided over the matter for four years, had the parties' briefs and affidavits regarding the attorney's work, and the opposing party did not demonstrate where any evidence was lacking). Whether to conduct an evidentiary hearing on a fee petition is within the discretion of the trial court. *A.L. Dougherty*, 2017 IL App (1st) 161949, ¶ 46; *Hess v. Lloyd*, 2012 IL App (5th) 090059, ¶ 26 ("[T]he circuit court's acceptance of unrebutted affidavits of counsel as to fees, in the absence of an evidentiary hearing, is within its discretion.").

¶ 35     Here, Swift has not demonstrated that the trial court abused its discretion in failing to hold an evidentiary hearing. First, despite Swift's assertion to the contrary, there is no evidence that he made a timely request for an evidentiary hearing. In his written response to the fee petition, Swift did not include any mention of an evidentiary hearing, much less make an explicit request for one. In addition, despite the trial court specifically stating at the status hearing in October 2019 that it was in the process of considering whether an evidentiary hearing was necessary, Swift made no request for an evidentiary hearing or otherwise indicated that he felt one was necessary. At the following status hearing in November 2019, the trial court stated that it had considered whether a hearing was necessary and concluded that it was not. It was only then—*after* the trial court had made its decision—that Swift indicated in any way for the first time that he desired an evidentiary hearing. At that point, however, it was too late, as the trial court had reached its decision. Given that Swift had been given multiple clear opportunities to request an evidentiary hearing and chose to pass on them, we hardly think Swift's after-the-fact request was timely or genuine.

¶ 36    Swift attempts to argue that his motion to set a jury trial should qualify as a request for an evidentiary hearing. We disagree. Swift's motion for a jury trial was based solely on his contention that the claim for attorney fees was essentially a breach of contract claim and that he had a constitutional right to a jury trial on a breach of contract claim. He made no contention that it was necessary to present evidence on disputed factual issues underlying the fee petition or that the presentation of evidence was otherwise necessary to resolve the fee petition. Moreover, after the trial court denied his motion for jury trial at the October 2019 hearing, it immediately set another status date on the fee petition, explicitly stating that it still needed to determine whether an evidentiary hearing on the fee petition was necessary. Despite this clear statement that the ruling on the motion for jury trial did not bear on the question of an evidentiary hearing, Swift gave absolutely no indication whatsoever that he desired or felt an evidentiary hearing was necessary. Instead, as discussed above, he chose to wait until after the trial court reached its decision that an evidentiary hearing was not necessary to claim for the first time that he thought such a hearing was required.

¶ 37    We also conclude that the trial court did not abuse its discretion in concluding that Swift failed to raise a factual issue in his response that necessitated the presentation of further evidence. Although Swift argued that certain categories of charges were "unacceptable" as a matter of law according to an Illinois Bar Journal article, he did not identify any specific charges that he contested or alleged to be improper, nor did he offer any other basis on which to conclude that any of the charges were unreasonable or excessive. Moreover, his claims that the hourly rate charged was excessive, that his $5,000 retainer was not properly applied, and that a jury would have awarded no more than $20,000 in fees were conclusory and unsupported in any manner—either

by attached documents or factual argument. Thus, in these respects, Swift failed to raise any factual issues that required further evidence to be resolved.

¶ 38    Moreover, neither in the trial court nor on appeal has Swift identified any reason why an evidentiary hearing would be necessary in this case. He has not identified any evidence he would have presented, any factual issues that could not be resolved without the presentation of evidence, any credibility determinations that needed to be made, or the reasonableness of any specific charges that needed to be tested through cross-examination. Tellingly, in his opening brief, Swift points out that he made certain payments ($5,000 retainer and $10,000 payment), but he makes no contention that the trial court erred in concluding that those payments were properly credited to his account or that the trial court could not have properly made that determination absent some other evidence that could only be presented at an evidentiary hearing. Similarly, he remarks in his brief that the trial court "subtracted only four billing entries that totaled $1,433.50," but again he falls short of calling that error or identifying other entries he believes the trial court should have subtracted. In other words, on appeal, as in the trial court, Swift simply makes conclusory claims and implies error without actually articulating any legal basis for the alleged claims or errors.

¶ 39    We also observe that, even if Swift had articulated specific factual issues that he claimed necessitated an evidentiary hearing, his failure to make Novel and AGDG's itemized statements of charges part of the record on appeal hinders our ability to assess whether such factual issues actually existed. Clearly, the trial court concluded that it was capable of assessing the reasonableness of the requested fees based on the itemized statements and its experience presiding over the matter since its inception. In fact, the record reflects that the trial court was able to assess that Swift's retainer had been properly applied and even disallowed certain charges it determined to be for AGBG's benefit and not Swift's. As the appellant, Swift bears the burden of presenting

a sufficiently complete record on appeal to allow for our meaningful review, and absent such a record, we will assume that the trial court's order was proper. Any questions that arise from the incompleteness of the record must be answered in favor of the appellees. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Accordingly, absent the ability to review those itemized statements, we have no basis on which to conclude that the trial court abused its discretion in finding that Swift had not raised a factual issue that necessitated an evidentiary hearing.

¶ 40    In sum, because Swift did not timely request an evidentiary hearing on the fee petition and did not raise any factual issues that required further evidence to resolve, the trial court was not required to conduct an evidentiary hearing on the fee petition and, thus, did not err in making the attorney's fees award without one.

¶ 41                                CONCLUSION

¶ 42    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 43    Affirmed.