2026 IL App (1st) 250057-U

SECOND DIVISION
June 16, 2026

Nos. 1-25-0057 & 1-25-1492 (cons.)

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| In re ESTATE OF NORA KORNESCZUK | ) |
| | ) Appeal from the Circuit Court of |
| (Eugene Kornesczuk, Plenary Guardian of the Estate of Nora Kornesczuk, | ) Cook County, Illinois |
| | ) |
| Petitioner-Appellee, | ) No. 2016 P 8084 |
| | ) |
| v. | ) |
| | ) Hon. Shauna Boliker, |
| James Kornesczuk, | ) Hon. Amee Alonso, |
| | ) Judges Presiding |
| Respondent-Appellant.) | ) |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Court did not abuse discretion in allocating responsibility for GAL's fee.

¶ 2     This case initially involved a dispute between siblings over the proper care of their aging and declining mother, Nora. Three of the siblings, including the guardian, Eugene, wanted to move Nora from her home into an assisted-living and memory-care facility. The fourth sibling, Jim, objected. The trial court ruled that Nora's interests were best served by a placement in the residential care facility Eugene had chosen. We affirmed that ruling. See *In re Estate of Kornesczuk*, 2023 IL App (1st) 211652-U, ¶ 54.

¶ 3    The dispute now is over the allocation of the fees for the guardian *ad litem*, or "GAL," who was appointed initially and later re-appointed to evaluate the case after Jim objected to his mother's placement. Jim appeals from two separate orders, each of which allocated a disproportionate responsibility for the fees to him. We consolidated the appeals.

¶ 4    In the first appeal, the total fee award—which is not contested—was $4,613. The court allocated $2,613 of the fees to Jim. He says the fee should have been split equally between the four kids, meaning he should owe only $1,153. He is appealing, in other words, over the difference of $1,460. His siblings have not filed a response brief, presumably calculating that the cost of preparing one would be greater than an outright defeat on appeal.

¶ 5    In the second appeal, the GAL was awarded $3,603 in fees. The court allocated $2,849 of those fees to Jim. Jim again complains that the division of the fees should have been equal, or roughly $900 each. The siblings have again not filed a response brief.

¶ 6    No matter the amount at stake, Jim is entitled to an appeal and our full consideration. Though we lack a response brief, we will take these appeals on the appellant's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (reviewing court may take case on appellant's brief only if issues are straightforward). As we explain below, we find no abuse of discretion in the trial court's rulings and affirm each one.

¶ 7                                    I. Appeal No. 1-25-0057

¶ 8    Given the issue here, we can dispense with a detailed history of this case, available at *Estate of Kornesczuk*, 2023 IL App (1st) 211652-U, ¶¶ 5-25. Suffice it to say that, as early as 2016, the children were engaged in litigation over their mother's guardianship that resulted in a settlement in 2017. *Id*. ¶ 5. At some point therein, as best we can tell, the GAL was appointed; the precise timing doesn't matter, only that the GAL had served a stint before his work ceased.

¶ 9 In October 2021, Eugene filed an emergency motion to place Nora in a residential care facility. Jim objected, prompting the court to reappoint the GAL to determine whether it was possible to ascertain Nora's wishes and to otherwise consider Nora's best interests. That led to an evidentiary hearing spread over three weeks, after which the trial court agreed with the three siblings and the GAL that it was in Nora's best interests to be placed in the residential facility. *Id*. ¶ 25. As noted, we affirmed that ruling. *Id.* ¶ 54.

¶ 10 The GAL then filed the fee petition before us now in this first appeal. He initially sought $10,358 in fees, but some of those fees were for services during his first stint, before his reappointment. The GAL withdrew that portion of the request and focused on the fees for his work after his reappointment—the amount of $4,613, as noted above.

¶ 11 The estate was out of money, so fees had to be borne by the siblings. At the hearing on the fee petition, Eugene argued that Jim should bear the brunt of those fees for two reasons. First, Eugene had paid a substantial sum of money over the years to cover expenses for Nora: "As your Honor knows, Nora really has no funds. And Eugene and his wife, Jane, have been paying for everything ***." In counsel's words, "we're talking tens of thousands of dollars for Nora."

¶ 12 Second, Eugene noted that the only reason the GAL was required to return to the case was Jim's objections to his siblings' plans for Nora: "the bulk of the fees post [the GAL's reappointment] were really caused by Jim Kornesczuk's objection and later appeal of your Honor's decision moving Nora to the facility where she's been at."

¶ 13 Having said that, counsel added that "Eugene spoke with his two sisters, and they were willing to contribute $2,000 to [the GAL's] fees."

¶ 14 The court stated that it was "well aware and has been provided documentation that Eugene Kornesczuk and his immediate family has been, you know, paying and making up for the

differences for many, many years now for his mother Nora. And I do believe that the reason why [the GAL] did come back was to answer many of the objections and the questions of Mr. Jim Kornesczuk." The court then confirmed with Eugene's counsel that the three siblings were willing to pay $2,000, and "then we have $2,613 that's remaining."

¶ 15    The court concluded: "I think after all of this time *** that we all have been here together with [Nora's] case, that the $2,613 is, you know, a very small amount for Mr. Jim Kornesczuk to take on in terms of paying [the GAL's] fees, which we all know he met many challenges and continues to do so on behalf of Nora and has certainly benefited her estate."

¶ 16    Jim's counsel stated that the $2,613 figure was "completely arbitrary" and "the first I've heard of this obviously. *** How do we—we're just saying that number? There's no math that I've heard that—or a reasoning for why that amount should be paid by Jim other than he made people do work in this case." Counsel continued: "I'm not sure how him exercising his rights or trying to do what's best for his mother is now, in essence, being—causing him to be punished financially" for litigating his mother's care and placement.

¶ 17    The court responded that "it's completely fair and equitable that [Jim] now contributes something considering the reason—the reasoning why we are back here or we came back here and reappointed [the GAL] for many of the things that Mr. Jim Kornesczuk filed."

¶ 18    Jim's counsel made it clear, after a brief misunderstanding, that he was *not* questioning the GAL's fee of $4,613. His complaint was directed at the "arbitrary" nature of the $2,613 allocation. The following colloquy occurred:

> "THE COURT: I'm not sure why you're arguing when the family that has been paying is offering to pay more. You know, I'm not sure why you're arguing that.
>
> [Jim's Counsel]: Well, he's the guardian. He's responsible for it.

- 4 -

[GAL]: That's not true.

THE COURT: That's not true, counsel. *** You know, if your client *** wants to pay the entire amount and take that away from Mr. Eugene Kornesczuk and his sisters, that's fine too. But that would be my only other suggestion."

¶ 19    Jim moved to reconsider. He claimed the uneven allocation was a "sanction" for litigating his mother's care; that the GAL spent almost no time on the appeal to this court, though that was the basis for the uneven allocation; and that he should be given an evidentiary hearing.

¶ 20    At the hearing on the motion to reconsider, the court offered to let Jim's counsel call a witness right then: "Did you want to call any witnesses, [counsel], based on your motion to reconsider? I just wanted to make sure. You certainly aren't precluded from doing that."

¶ 21    Counsel responded: "No, your Honor. Just the argument. Again, we're asking for is if you're—if we're not just going to divide this up equally, there needs to be a hearing. Again, I don't—That's all. But not right now. Not in support of my motion, no."

¶ 22    The GAL noted that the point of the uneven allocation was not simply focusing on the appeal—where the GAL admittedly performed almost no work—but on all his work since his reappointment, which was spawned by Jim's objection.

¶ 23    The circuit court denied the motion to reconsider. The court denied that it was sanctioning Jim, noting that the law gave her discretion to allocate the GAL's fee award in a just and equitable manner. The court found no reason to change its initial allocation.

¶ 24    This first of two appeals followed. Jim argues that the court abused its discretion in allocating more than half of the GAL's fees to him alone; that there was no evidence that Eugene paid significant out-of-pocket sums for Nora's care; that almost none of the GAL's fees were related to the initial appeal; and that the court should have granted him an evidentiary hearing.

¶ 25    Section 11a-10 of the Probate Act provides that "[t]he allocation of guardian *ad litem* fees and costs is within the discretion of the court." 755 ILCS 5/11a-10 (West 2022). So we review the court's judgment for an abuse of discretion; we will uphold the trial court's ruling unless no reasonable person would adopt the trial court's view. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 26    Jim spends much of his brief noting that little of the GAL's fees were related to the appeal before this court. We agree with the GAL below, however, that this was never the trial court's point. The point is that the GAL was brought back into the case only because of Jim's objection to Nora's placement and the subsequent litigation—*that* point is undisputed. Once reappointed, the GAL was required to perform his duties and is entitled to compensation for them. Tying the GAL's work literally and exclusively to the appeal is a straw-man argument cherry-picked from a line in the judge's comments; the court's reasoning was not so limited.

¶ 27    Nor do we agree with Jim's claim that the uneven allocation of the fees was a sanction. The court's discretion in allocating fees includes a number of considerations. Many are aimed at the reasonableness of the fee, but the reasonableness of the GAL's fee here is not in question. Jim made clear below, in his notice of appeal, and in his appellate brief that he was not questioning the reasonableness of the fee.

¶ 28    Beyond that, one of the things a court may consider is "which party brought about the need for the GAL fees." *In re Marriage of McJoynt*, 2025 IL App (3d) 240447-U, ¶ 24; see *In re Marriage of Patel & Sines-Patel*, 2013 IL App (1st) 112571, ¶ 148 (court may consider "whether the amount of attorney fees was the result of the actions of one or both of the parties."). For example, in *In re Marriage of Kramer*, 211 Ill. App. 3d 401, 413 (1991), the trial court did not abuse its discretion in awarding half of the GAL fees to the ex-wife, even though the ex-husband was far more financially able to pay, as "the court's award was based in part upon its view that

[the ex-wife's] actions were the cause of a substantial portion of the litigation."

¶ 29    It was not an abuse of discretion for the court to reason that, because one party's (ultimately unsuccessful) actions were solely responsible for the reappointment of the GAL, that same party should pay more of those fees than the (successful) parties who had nothing to do with the GAL's reappointment. That is not a sanction. It's the appropriate exercise of discretion.

¶ 30    Jim also complains about the "arbitrary" nature of the $2,613 allocation. It is not arbitrary at all. It's the total number of (admittedly reasonable) fees minus the amount ($2,000) that the other three siblings volunteered to cover. The court specifically stated that her "only other suggestion," other than allowing the three siblings to contribute $2,000, was that Jim pay the full freight. The "arbitrary" allocation Jim received was clearly better for him than the only other alternative the court was considering.

¶ 31    Nor is there merit to Jim's claim that he should have been afforded an evidentiary hearing. First of all, he was. The court flat-out invited him to call witnesses at the hearing on the motion to reconsider; he demurred. And he was free to request one at the initial hearing, once he heard the other siblings argue for an unequal allocation, but he did not. He cannot blame the circuit court for failing to grant him process he did not request. See *Reiniche v. Paul*, 2021 IL App (1st) 192488-U, ¶ 35 (court did not err in failing to hold evidentiary hearing on fee petition when opposing party did not timely request one).

¶ 32    But the principal reason we reject this argument is that the driving force behind the court's allocation was the *undisputed* fact that Jim's actions prompted the need for the GAL's reappointment in the first place. That point required no evidentiary hearing; the judge knew that fact to be true because she was the one who reappointed the GAL.

¶ 33    Finally, Jim makes much of the fact that there was no evidence that Eugene paid

significant sums of money out of his own pocket to care for Nora. The court based that conclusion on its lengthy participation in this case, as judges often do in such situations. In any event, we have already given reason enough why the court's allocation was not an abuse of discretion. So even if Jim is correct on this point, we would not find error. We affirm the court's judgment.

¶ 34                                    II. Appeal No. 1-25-1492

¶ 35    The second appeal involves the subsequent fee petition filed by the GAL for the period of March 8, 2024 through February 3, 2025. The GAL sought $3,603.75 in fees, which, again, no party—not even Jim—has contested as unreasonable. The GAL included with that fee petition a supporting memorandum that suggested that the vast majority of his work during this time period was due to the actions of Jim; the GAL calculated that number at $2,957.50 of his total fees.

¶ 36    The actions initiated by Jim, according to the GAL, included his motion to reconsider the first fee allocation that we discussed above; Jim's motion to bring his mother to church on Sunday; Eugene's motion to restrict Jim's ability to remove his mother from her residential facility without permission; and Jim's emergency motion regarding the placement of Nora on hospice care.

¶ 37    At the hearing on the fee petition, Eugene argued that the proposed fee allocation was "appropriate, given that really all the fees generated, in our opinion is really just from [Jim] bringing action after [] action, which your Honor is well aware of, dealing with visitation and/or the Hospice issue."

¶ 38    The GAL, for his part, stood by his proposal: "I do believe that I have put out there what I believe is related to [Jim] and what he has filed and court appearance related to that."

¶ 39    The court addressed Jim's counsel:

"THE COURT: I know you are objecting to the allocation or who is responsible and in what amounts. Do you want to argue it or do you want me to give you time to put something in writing? It's up to you.

[Jim's Counsel]: No, I could make my points today.

THE COURT: Yes, I'm just giving you the option.

[Jim's Counsel]: I appreciate that."

¶ 40    Jim's counsel argued that the GAL had no right to direct the apportionment of his fees; that Jim should not be sanctioned for filing motions or taking actions in Nora's best interests; and that some of the time entries were not, on their face at least, obviously related to Jim.

¶ 41    On that last point, as counsel began to walk through a few of these time entries, the court lost track and interrupted him: "What page? You don't want to put anything in writing. You want to argue it here today. I had no notice that you were going to go through this like this today." The court asked counsel to "slow down and tell me where you are at. You are just throwing these things at me from Zoom. I gave you the opportunity to put something in writing. You don't want to, which is fine. But give me the opportunity to see what you are talking about."

¶ 42    After counsel did so, the GAL explained the time entries to the court. For example, "Reviewed Jim's letter" referred to Jim Kornesczuk's letter alleging that his mother was being mistreated at the residential care facility; his phone call with "counsel" meant Eugene's counsel, discussing those same allegations. His entries for April 19 concerned his conversation with one of the sisters and his own visit to the facility, both in response to Jim's allegations of neglect.

¶ 43    The court took the matter under advisement and issued a written ruling. The court awarded the GAL his requested fee of $3,603.75 and ordered Jim to pay $2,849.15 of that fee, with the other siblings splitting the rest. The court agreed that the bulk of the GAL's work was

due to the motions filed by Jim, most of which were unsuccessful and none of which, in the court's view, "were made in the best interests of" Nora.

¶ 44    Jim again moved to reconsider. His principal argument was that he was denied an evidentiary hearing. At the hearing on the motion to reconsider, the circuit court wasted no time in addressing that argument:

> "[H]onestly, Counsel, I find your argument very disingenuous that I've somehow abused my discretion in not giving you an evidentiary hearing when I was trying to do so trying to get you—give you the opportunity to put this in writing so we could later have a hearing. You refused that. I don't think it's my job to have to force you to have an evidentiary hearing, so, therefore, your petition to reconsider is denied."

¶ 45    Jim again appeals. He again argues that the court erred in not granting him an evidentiary hearing and that the unequal allocation of the fee award was punitive, akin to a sanction, despite the fact that some of Jim's motions were meritorious.

¶ 46    We agree with the circuit court that Jim was invited by the court to avail himself of any process he wished—a written objection, a hearing, or both. Counsel clearly said he was content to argue the fee petition on its first presentment. Again, he cannot complain that he was denied a hearing that he did not request. See *Reiniche*, 2021 IL App (1st) 192488-U, ¶ 35 (failure to hold evidentiary hearing was not error, as party opposing fee petition did not timely request one).

¶ 47    That is particularly true because, unlike the first fee petition addressed above, this time around Jim cannot claim to have been blind-sided. He had seen the GAL's memorandum that allocated most of the fees to Jim, and he surely knew his siblings would adopt the GAL's recommendation. If he wanted an evidentiary hearing, that should have been the first thing out of counsel's mouth at the original presentment of the fee petition, if not reduced to writing.

¶ 48     Jim devotes much argument to validating the motions he filed, claiming they served a salient purpose and in some instances were granted by the court. That may be true in part, but as we noted above, every motion Jim filed required the participation of the GAL, whose re-appearance in the case would not have been necessary absent Jim's objections and continuing litigious behavior. The court here (a new judge on this second fee petition) had presided over many, if not all, these motions, and clearly determined that much of Jim's litigation was not in Nora's best interests. We have no basis to find an abuse of discretion in that determination.

¶ 49     Nor do we find an abuse of discretion in allocating a disproportionate award of fees against the party that forced the GAL's reappointment in the first place, as we already explained above. See *Marriage of McJoynt*, 2025 IL App (3d) 240447-U, ¶ 24; *Marriage of Patel & Sines-Patel*, 2013 IL App (1st) 112571, ¶ 148; *Marriage of Kramer*, 211 Ill. App. 3d at 413.

¶ 50     We cannot say that no reasonable person would adopt the circuit court's position. We thus affirm the court's allocation on this second appeal as well.

¶ 51                                    CONCLUSION

¶ 52     The judgment of the circuit court in Appeal No. 1-25-0057 is affirmed. The judgment of the circuit court in Appeal No. 1-25-1492 is affirmed.

¶ 53     Affirmed.