**2021 IL 126387**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

——————————

(Docket No. 126387)

JOHN TILLMAN, Appellee, v. J.B. PRITZKER, in His Official Capacity as of Governor of the State of Illinois, *et al.*, Appellants.

*Opinion filed May 20, 2021.*

CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Garman, Theis, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner John Tillman filed a petition for leave to file a taxpayer action under section 11-303 of the Code of Civil Procedure (Code) (735 ILCS 5/11-303 (West 2018)) in the circuit court of Sangamon County. In his attached complaint, petitioner alleged that certain general obligation bonds issued by the State of Illinois

in 2003 and 2017 were unconstitutional. The circuit court denied the petition to file the proposed complaint, finding that there was no reasonable ground for the filing of such action. The appellate court reversed the circuit court's judgment and remanded for further proceedings. 2020 IL App (4th) 190611. For the following reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                              BACKGROUND

¶ 3        On July 1, 2019, petitioner filed a petition in the circuit court pursuant to section 11-303 of the Code seeking leave to file a taxpayer complaint to restrain and enjoin the disbursement of public funds by respondents, Governor J.B. Pritzker, Treasurer Michael W. Frerichs, and Comptroller Susana A. Mendoza. Section 11-303 sets forth the following requirements for a taxpayer action filed by a private citizen:

> "§ 11-303. Action by private citizen. Such action, when prosecuted by a citizen and taxpayer of the State, shall be commenced by petition for leave to file an action to restrain and enjoin the defendant or defendants from disbursing the public funds of the State. Such petition shall have attached thereto a copy of the complaint, leave to file which is petitioned for. Upon the filing of such petition, it shall be presented to the court, and the court shall enter an order stating the date of the presentation of the petition and fixing a day, which shall not be less than 5 nor more than 10 days thereafter, when such petition for leave to file the action will be heard. The court shall also order the petitioner to give notice in writing to each defendant named therein and to the Attorney General, specifying in such notice the fact of the presentation of such petition and the date and time when the same will be heard. Such notice shall be served upon the defendants and upon the Attorney General, as the case may be, at least 5 days before the hearing of such petition.

> Upon such hearing, if the court is satisfied that there is reasonable *ground for the filing of such action, the court may grant the petition and order the complaint to be filed and process to issue*. The court may, in its discretion, grant leave to file the complaint as to certain items, parts or portions of any appropriation Act sought to be enjoined and mentioned in such complaint, and

may deny leave as to the rest." (Emphasis added.) 735 ILCS 5/11-303 (West 2018).

¶ 4 In the proposed complaint attached to his petition, petitioner alleged, in relevant part, that certain general obligation bonds issued by the State in 2003 and 2017 violated article IX, section 9(b), of the Illinois Constitution of 1970 on the ground that they were not issued for qualifying "specific purposes." Petitioner alleged that "specific purposes," within the meaning of this constitutional provision, refers exclusively to "specific projects in the nature of capital improvements, such as roads, buildings, and bridges."

¶ 5 Article IX, section 9(b), of the Illinois Constitution provides:

"State debt for specific purposes may be incurred or the payment of State or other debt guaranteed in such amounts as may be provided either in a law passed by the vote of three-fifths of the members elected to each house of the General Assembly or in a law approved by a majority of the electors voting on the question at the next general election following passage. Any law providing for the incurring or guaranteeing of debt shall set forth the specific purposes and the manner of repayment." Ill. Const. 1970, art. IX, § 9(b).

¶ 6 The 2003 bonds challenged by petitioner were issued pursuant to a statute enacted into law on April 7, 2003, after being passed by the vote of at least three-fifths of the members elected to each house of the General Assembly. 30 ILCS 330/7.2 (West 2018) (added by Pub. Act 93-2, § 10 (eff. Apr. 7, 2003)). Titled "State pension funding," the law authorized $10 billion in bonds to be issued "for the purpose of making contributions to the designated retirement systems," which the statute defined as the State Employees' Retirement System of Illinois, the Teachers' Retirement System of the State of Illinois, the State Universities Retirement System, the Judges Retirement System of Illinois, and the General Assembly Retirement System. *Id.* The statute created the Pension Contribution Fund as a special fund in the state treasury. *Id.* § 7.2(b). It further directed that all proceeds from the bond sale order, less the amounts authorized to be deposited directly into the capitalized interest account of the General Obligation Bond Retirement and Interest Fund or otherwise directly paid out for bond sale expenses, be deposited into the Pension Contribution Fund. *Id.* The law also outlined requirements for depositing the bond proceeds, including the fund into which the

proceeds were to be deposited and the persons responsible for making the deposits and allocations to the designated retirement systems. *Id.* § 7.2(c), (d). According to petitioner's complaint, the bond sale order was executed on June 5, 2003, and the entire $10 billion in general obligation bonds were issued on June 12, 2003, with maturity dates ranging from 2008 to 2033.

¶ 7    The 2017 bonds challenged by petitioner were issued pursuant to a statute enacted into law on July 6, 2017, after being passed by the vote of at least three-fifths of the members elected to each house of the General Assembly. *Id.* § 7.6 (added by Pub. Act 100-23, § 75-10 (eff. July 6, 2017)). Titled "Income Tax Proceed Bonds," the statute authorized $6 billion in bonds to be issued "for the purpose of paying vouchers incurred by the State prior to July 1, 2017." *Id.* § 7.6(b). The law created the Income Tax Bond Fund as a special fund in the state treasury and directed that all proceeds from the bond sale order, less the authorized amounts for bond sale expenses, be deposited into that fund. *Id.* § 7.6(c). The statute further directed that "[a]ll moneys in the Income Tax Bond Fund shall be used for the purpose of paying vouchers incurred by the State prior to July 1, 2017." *Id.* According to petitioner's complaint, the bond sale order was executed on October 6, 2017, and the entire $6 billion in general obligation bonds were issued on November 8, 2017, with maturity dates ranging from 2018 to 2028.

¶ 8    Petitioner alleged that the 2003 bonds failed to comply with the "specific purposes" requirement in the Illinois Constitution, for two reasons. First, petitioner alleged that the State used part of the bond proceeds to reimburse the general revenue fund for a portion of the State's required contributions to its retirement systems for fiscal years 2003 and 2004. The complaint characterized these actions as "deficit financing." Petitioner alleged that the remainder of the 2003 bond proceeds were used to reduce the State's annual pension contributions by the amount of the debt service on the bonds. The complaint characterized this transaction as a "loan" to the pension systems that amounted to "financial speculation." Petitioner alleged that neither of these purposes is authorized by the Illinois Constitution as a "specific purpose" for long-term debt incurred by the State. With respect to the 2017 bonds, petitioner alleged that the proceeds from these bonds were used to pay the State's backlog of unpaid bills incurred as a result of the 2016-17 budget impasse. He alleged that the State's issuance of bonds for

this purpose did not qualify as a "specific purpose" authorized by the Illinois Constitution.

¶ 9        According to the complaint, approximately $14.35 billion of the 2003 and 2017 bonds remained outstanding as of the date petitioner filed his petition. Petitioner alleged that "the burden of servicing this unconstitutional debt falls on the taxpayers of Illinois," a group that includes petitioner. In his prayer for relief, he requested (1) a judicial declaration that the 2003 and 2017 bond debts were unconstitutional and unenforceable and (2) an injunction prohibiting respondents from making any further disbursements of public funds in service of the unconstitutional debts.

¶ 10       Respondents filed a written objection to the petition. They argued that petitioner failed to establish reasonable grounds for filing his taxpayer complaint because his constitutional claims were invalid on the face of the complaint. Alternatively, respondents contended petitioner's complaint was barred by *laches* because he waited to file his action until years after the authorizing statutes were enacted and the bonds issued and, by that time, the State had already made substantial payments on the bonds. Respondents also argued that petitioner's claims with respect to the 2003 bonds were barred by the statute of limitations and that the complaint failed to join bondholders as necessary parties to the action.

¶ 11       On August 29, 2019, the circuit court denied petitioner's section 11-303 petition. In a memorandum order, the court held that the issue of whether reasonable grounds existed for filing the proposed taxpayer action could not be meaningfully addressed without reviewing the language of the 2003 and 2017 laws to determine whether they stated their specific purposes in compliance with the constitution. After conducting such review, the court held that "the legislature stated with reasonable detail the specific purposes for the issuance of the [2003 and 2017] bonds and assumption of the debt as well as the objectives to be accomplished by enactment of the legislation." Accordingly, the court concluded that reasonable grounds did not exist for filing the complaint because the claims had no legal merit. Petitioner filed an appeal.

¶ 12       The appellate court reversed the circuit court's order and remanded the case for further proceedings. 2020 IL App (4th) 190611. Citing this court's decision in *Strat-O-Seal Manufacturing Co. v. Scott*, 27 Ill. 2d 563 (1963), the court held that the "reasonable ground" analysis under section 11-303 is limited to determining

- 5 -

whether the proposed complaint is "frivolous, filed for a malicious purpose, or is otherwise unjustified." 2020 IL App (4th) 190611, ¶ 31. The court concluded that petitioner's proposed complaint "sets forth a colorable reading of the Illinois Constitution that does not appear to be frivolous on its face" and, therefore, that "the petition and complaint state reasonable grounds for filing suit." *Id.* The court stated that it was expressing no opinion on the merits of petitioner's claims, nor was it addressing respondents' alternative arguments based on *laches*, the statute of limitations, and the failure to join necessary parties. *Id.* ¶¶ 31, 33.

¶ 13 This court allowed respondents' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).

¶ 14 ANALYSIS

¶ 15 "An action to restrain and enjoin the disbursement of public funds by any officer or officers of the State government may be maintained either by the Attorney General or by any citizen and taxpayer of the State." 735 ILCS 5/11-301 (West 2018). When such an action is brought by a citizen taxpayer, the taxpayer must first petition the court for leave to file the action. *Id.* § 11-303. "One of the purposes of the [taxpayer leave-to-file statute] was to provide a check upon the indiscriminate filing of taxpayers' suits." *People ex rel. White v. Busenhart*, 29 Ill. 2d 156, 161 (1963). The circuit court's decision whether to permit the filing of a taxpayer action under section 11-303 is reviewed for an abuse of discretion. *Id.*; *Hamer v. Dixon*, 61 Ill. App. 3d 30, 31-32 (1978).

¶ 16 Section 11-303 requires the taxpayer to attach a copy of the complaint to his petition. 735 ILCS 5/11-303 (West 2018). The petition must be presented to the circuit court, and the court shall set a date for hearing the petition. *Id.* Such hearing must take place between 5 and 10 days after the petition is filed. *Id.* After the hearing, if the court "is satisfied that there is reasonable ground for the filing of [the taxpayer] action, the court may grant the petition and order the complaint to be filed and process to issue." *Id.* In exercising its discretion to determine whether reasonable grounds exist, the court must take the complaint's well-pled factual allegations as true. *Busenhart*, 29 Ill. 2d at 161*; Hamer*, 61 Ill. App. 3d at 31-32.

¶ 17    Before addressing whether the circuit court abused its discretion in finding that no reasonable ground existed for filing petitioner's action, we must define the phrase "reasonable ground." See 735 ILCS 5/11-303 (West 2018) ("if the court is satisfied that there is reasonable ground for the filing of such action, the court may grant the petition"). This question involves statutory interpretation, which is guided by familiar, well-established principles. Our primary goal in interpreting a statute is to ascertain the legislature's intent. *People v. Clark*, 2019 IL 122891, ¶ 18. The best indicator of legislative intent is the language of the statute, given its plain, ordinary meaning. *People v. Alexander*, 204 Ill. 2d 472, 485 (2003). If the language is clear and unambiguous, it should be given effect as written without resort to other aids of statutory interpretation. *Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002). Statutory interpretation is a question of law, subject to *de novo* review. *Clark*, 2019 IL 122891, ¶ 17.

¶ 18    Petitioner argues, and the appellate court held, that "reasonable ground," within the meaning of section 11-303, is limited to determining whether a complaint is frivolous or filed for a malicious purpose. Under this rationale, the statute does not permit the circuit court to analyze the merits of a complaint to determine whether it states a legally sufficient cause of action. Furthermore, petitioner argues that the "reasonable ground" determination excludes consideration of any affirmative defenses raised by the defendant, such as *laches* or the statute of limitations. We reject these arguments.

¶ 19    Petitioner's narrow interpretation of the statute stems from a misreading of this court's decision in *Strat-O-Seal*. In that case, an Illinois corporation and an individual citizen of the state filed a petition for leave to file a taxpayer action under the statutory predecessor to section 11-303. *Strat-O-Seal*, 27 Ill. 2d at 564 (citing Ill. Rev. Stat. 1961, ch. 102, ¶ 11 *et seq.*). The suit sought to enjoin the defendant state officers from granting certain financial assistance to persons who were out of employment solely because they were participating in a strike. *Id.* This court first noted that "[n]o question [was] raised about the plaintiffs' standing to sue, or about the sufficiency of the proposed complaint to allege the making of such payments and the likelihood of their continuation in the absence of an injunction." *Id.* Rather, "[t]he sole question in this case [was] whether the facts alleged in the petition and proposed complaint, taken as true, disclose a reasonable ground for the filing of a

suit." *Id.* at 564-65. The opinion discussed the relevant statutory provisions relied on by the plaintiffs in their proposed complaint. *Id.* at 565.

¶ 20 The *Strat-O-Seal* court then held as follows:

"After a careful examination of the proposed complaint and the facts alleged in the petition we are satisfied that reasonable grounds exist for filing suit. As we have indicated, the statute governing these proceedings provides that when suit to restrain the disbursement of public moneys is brought by a citizen taxpayer, it must be commenced by petition for leave to file. The purpose of this requirement was to establish a procedure which would serve as a check upon the indiscriminate filing of such suits. (*Barco Manufacturing Co. v. Wright*, 10 Ill.2d 157 [(1956)].) Prior to its enactment a taxpayer could file suit as a matter of right, and when such a suit was brought for an ulterior or malicious purpose it could seriously embarrass the proper administration of public affairs. As we pointed out in *Hill v. County of La Salle*, 326 Ill. 508, 515 [(1927)], 'When the right of a public officer charged with the duty and responsibility of the proper application of public funds to disburse such funds is challenged by a lawsuit, it is obvious that for his own protection he will refuse to pay out the money in his custody until the suit is finally adjudicated.'

While it is important, therefore, that unjustified interferences be prevented, it is equally important that suits which do not appear unjustified are not barred or foreclosed. We find nothing in the present record to indicate that the purpose is frivolous or malicious, or that a filing of the complaint is otherwise unjustified.

In this proceeding we are not concerned, of course, with whether the allegations of the proposed complaint can, on hearing, be sustained, and we express no opinion thereon. All we decide is that for the purpose of this inquiry the petition states reasonable grounds for filing suit." *Id.* at 565-66.

¶ 21 Contrary to petitioner's argument, *Strat-O-Seal* did not hold that the exclusive grounds for denying a section 11-303 petition are whether the proposed complaint is frivolous or malicious. Rather, the court held that such petition may also be denied if "a filing of the complaint is otherwise unjustified." *Id.* at 566. There is nothing in *Strat-O-Seal* that purports to limit the plain statutory language in section

11-303, which gives the trial court discretion to determine whether the proposed taxpayer action is supported by a reasonable ground. In determining whether reasonable grounds exist, the statute does not expressly preclude the reviewing court from examining the legal merits of the complaint or addressing what are ordinarily considered to be affirmative defenses.

¶ 22 This interpretation of section 11-303 conforms to the long-standing construction that Illinois courts have given the "reasonable ground" language. In *Lund v. Horner*, 375 Ill. 303, 309 (1940), this court held that, upon review of the circuit court's denial of leave to file a taxpayer's suit, the question is "whether the complaint sought to be filed sufficiently shows a right of action." We later reaffirmed that it is proper for a court to consider the legal sufficiency of the proposed complaint when evaluating a section 11-303 petition. *Busenhart*, 29 Ill. 2d at 161 (holding that exercise of the court's discretion "involves ascertaining whether the complaint states a cause of action"). Most recently, in *Wirtz v. Quinn*, 2011 IL 111903, ¶¶ 6, 9, 111, this court affirmed the circuit court's denial of the plaintiffs' section 11-303 petition based on our conclusion that all the constitutional claims in the proposed complaint failed as a matter of law. See also *Kaider v. Hamos*, 2012 IL App (1st) 111109, ¶¶ 33, 35 (affirming the denial of leave to file a taxpayer action based on the legal insufficiency of plaintiff's claims).

¶ 23 In addition to addressing the legal merits, courts have also considered other arguments in determining whether there are reasonable grounds for filing a taxpayer action, including that the proposed complaint was barred by the statute of limitations. See, *e.g.*, *Busenhart*, 29 Ill. 2d at 165 (*res judicata* and vagueness); *Hamer*, 61 Ill. App. 3d at 33-34 (collateral attack on a prior Illinois Supreme Court judgment); *Flynn v. Stevenson*, 4 Ill. App. 3d 458, 461-62 (1972) (statute of limitations and collateral attack on ordinances). Accordingly, petitioner's argument and the appellate court's holding that the trial court is limited to addressing whether a proposed complaint is frivolous or malicious when deciding whether to allow a section 11-303 petition are incorrect.

¶ 24 We now turn to reviewing whether the circuit court abused its discretion in denying the section 11-303 petition at issue in this appeal. In doing so, we note that this court may sustain the circuit court's judgment on any ground supported by the record, even a ground not relied on by that court. *Eychaner v. Gross*, 202 Ill. 2d

228, 262 (2002); *Beckman v. Freeman United Coal Mining Co.*, 123 Ill. 2d 281, 286 (1988). Although respondents urge this court to address the merits of petitioner's constitutional claims, we decline to do so before determining whether there are any nonconstitutional grounds for affirming the circuit court's decision. See *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort").

¶ 25    Respondents first argue that the petition lacks reasonable grounds for filing the taxpayer action because the proposed complaint is barred by *laches*. *Laches* is an equitable defense asserted against a party "who has knowingly slept upon his rights and acquiesced for a great length of time, [citation] and its existence depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did." *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958). In contrast to a statute of limitations, which forecloses an action based on a simple lapse of time, *laches* turns on "the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties." *Id.* "The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991). There are two fundamental elements of *laches*: (1) "lack of due diligence by the party asserting the claim" and (2) "prejudice to the opposing party." *Van Milligan v. Board of Fire & Police Commissioners of the Village of Glenview*, 158 Ill. 2d 85, 89 (1994). Whether *laches* is applicable depends on the facts and circumstances of each case. *La Salle National Bank v. Dubin Residential Communities Corp.*, 337 Ill. App. 3d 345, 351 (2003).

¶ 26    In this case, the relevant facts to determine *laches* are readily apparent from the record. The first element, lack of diligence by the party asserting the claim, encompasses the plaintiff's delay in bringing the action while having notice or knowledge of defendant's conduct and the opportunity to file suit. *Pyle*, 12 Ill. 2d at 553. It is undisputed that petitioner waited to file his taxpayer action until 16 years had elapsed following enactment of the 2003 bond authorization statute and 2 years had elapsed following enactment of the 2017 bond authorization statute. We find that this delay is unreasonable and supports the application of *laches* to petitioner's complaint. In other taxpayer actions involving similar delays, courts

have applied *laches*. See *Kampmann v. Hillsboro Community School District No. 3 Board of Education*, 2019 IL App (5th) 180043, ¶ 22 (holding taxpayer's suit challenging board's authority to enter into construction contract was barred by laches where it was filed four years after the contract, three years after bonds were issued, and more than a year after construction was completed and payments made); *Di Santo v. City of Warrenville*, 59 Ill. App. 3d 931, 941 (1978) (holding that water users' suit to rescind city contract was barred by *laches* where suit was filed two years after the contract and one year after bonds were transferred to a trust and shares in the trust were sold to the public); *Solomon v. North Shore Sanitary District*, 48 Ill. 2d 309, 322 (1971) (holding that a delay of over two years before bringing suit, coupled with the issuance and sale of $8 million in bonds and the expenditure of part of these funds in furtherance of a construction project, resulted in the public interest requiring that plaintiffs' claim be barred by *laches*).

¶ 27    Furthermore, because the bond authorization statutes are matters of public record, we presume that petitioner had constructive notice of the facts supporting his claims at the time the statutes were enacted. Constructive notice is defined as " '[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of ***; notice presumed by law to have been acquired by a person and thus imputed to that person.' " *La Salle National Bank*, 337 Ill. App. 3d at 352 (quoting Black's Law Dictionary 1088 (7th ed. 1999)). It is well established that matters of public record constitute constructive notice to a plaintiff for purposes of applying *laches*. See *id.* at 354 (collecting cases); *Di Santo*, 59 Ill. App. 3d at 940-41 (plaintiffs were deemed to be aware of city's purchase of water works and sewer system as a matter of public record); *Bowman v. County of Lake*, 29 Ill. 2d 268, 280 (1963) (cash and land transfers made by the county were matters of public record, and plaintiff had no excuse for delay in bringing his taxpayer action until one to three years after transfers were made). Accordingly, in this case, petitioner had constructive notice as of the dates the statutes were enacted that the State intended to issue bonds for the purposes outlined in the laws. Petitioner also had constructive notice of the dates the bonds were issued by the State. Nevertheless, petitioner offers no excuse for why he waited 2 years (in the case of the 2017 bonds) and 16 years (in the case of the 2003 bonds) to file his action challenging the constitutionality of the bonds.

¶ 28    The second fundamental element of *laches* is whether respondents suffered prejudice as a result of petitioner's delay in filing the action. In cases involving taxpayer suits filed against public officers, courts have held that the prejudice element is satisfied where the plaintiff waits to file until after the defendant has expended large sums of money (*Solomon*, 48 Ill. 2d at 322; *Bowman*, 29 Ill. 2d at 280) or where the defendant has made irrevocable transactions rendering it impossible to return circumstances to the status quo (*Solomon*, 48 Ill. 2d at 322; *Di Santo*, 59 Ill. App. 3d at 941). Both aspects of prejudice are present in this case.

¶ 29    The State issued and sold the 2003 bonds, applied the proceeds as specified in the law, and made payments on the bonds for years while petitioner did nothing. More than 16 years later, petitioner requested that the court declare the bonds invalid and enjoin the State from making future payments on them. The same is true for the 2017 bonds, which were authorized by the General Assembly and issued and sold by the State. The proceeds from the sale were then used to pay billions of dollars in unpaid state vouchers, all while petitioner did nothing to stop any of these actions. It is patently obvious that the State will suffer some prejudice if relief is granted at this extremely late stage. Respondents maintain that granting relief to petitioner would amount to a *de facto* default on outstanding bonds that are backed by the full faith and credit of the State. We agree. Enjoining the State from meeting its obligation to make payments on general obligation bonds will, at the very least, have a detrimental effect on the State's credit rating.

¶ 30    Nevertheless, petitioner argues that the State has not suffered prejudice from his delay because his complaint does not seek to undo past payments made by the State on the bonds but, rather, seeks to enjoin only future payments. Thus, according to petitioner, an individual can wait years, or even decades, after bonds are authorized and issued by the State to challenge the issuance of the bonds in court. We reject this argument. The fact that a petitioner requests only prospective relief does not preclude the application of *laches* where he had constructive notice of his legal claims years before filing his action. See, *e.g.*, *Solomon*, 48 Ill. 2d at 322 (holding that *laches* barred a taxpayer action to enjoin the future issuance of bonds and expenditure of bond proceeds); *Schnell v. City of Rock Island*, 232 Ill. 89, 93, 96 (1907) (holding that *laches* barred an action to enjoin future municipal bond payments).

¶ 31    We hold that the necessary elements for *laches* have been met in this case. There is no reasonable ground under section 11-303 of the Code for filing petitioner's proposed complaint. We therefore affirm the circuit's order denying the instant petition, although on different grounds than those relied upon by that court.

¶ 32                              CONCLUSION

¶ 33    For the foregoing reasons, we hold that the circuit court did not abuse its discretion in denying the petition for leave to file a taxpayer action. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 34    Appellate court judgment reversed.

¶ 35    Circuit court judgment affirmed.