**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240447-U

Order filed September 5, 2025

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF THEODORE MCJOYNT, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Petitioner-Appellee, | ) ) | Appeal No. 3-24-0447 |
| and | ) ) | Circuit No. 22-DC-763 |
| | ) | |
| ANGELA MCJOYNT, | ) ) | The Honorable James F. McCluskey, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in requiring respondent to pay a portion of the fees of the two guardians *ad litem* that were appointed by the trial court. Affirmed.

¶ 2    Petitioner, Theodore McJoynt, filed a petition for dissolution of his marriage to respondent, Angela McJoynt. During the course of the proceedings, the trial court appointed two different guardians *ad litem* (GALs or GAL for singular reference) at different times to protect and preserve the interests of the parties' minor children. After the parties reached agreements that resolved the dissolution proceedings, the two GALs filed petitions for fees. The trial court

granted the fee petitions and, on Theodore's motion for reallocation, divided the GAL fees equally between the parties. Angela appeals, arguing that the trial court erred in: (1) requiring her to pay a portion of the first GAL's fees, even though she had previously obtained a full fee waiver from the trial court; and (2) appointing the second GAL and requiring Angela to pay an equal share of the second GAL's fees. We affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        The parties were married in August 2015 and had three children. In August 2022, Theodore filed a petition for dissolution of marriage. Approximately two months later, in October 2022, Angela filed an appearance as a self-represented litigant and an application for a fee waiver pursuant to Illinois Supreme Court Rule 298 (eff. July 1, 2019) and section 5-105 of the Code of Civil Procedure (Code) (735 ILCS 5/5-105 (West 2022)). In the fee waiver application, Angela indicated that her income from employment was approximately $900 for the past month and approximately $10,000 for the past 12 months, that her expenses were approximately $4,200 per month, and that she had limited assets. After reviewing the application, the trial court granted Angela a full fee waiver, stating in its preprinted order that Angela could "participate in this case without payment of fees, costs, or charges."

¶ 5        In March 2023, an attorney filed an appearance in the trial court to represent Angela in the dissolution proceedings. The following month, Theodore filed an emergency motion to restrict Angela's parenting time and to have a GAL appointed. After a hearing at which neither Angela nor her attorney were present despite receiving notice, the trial court appointed attorney Brian Covert as GAL to protect and preserve the interests of the three minor children in the proceedings. The trial court's written order provided that Covert would be paid a $2,000 retainer, that his retainer and fees would be split equally between the parties, and that his retainer and fees

2

could be reallocated at a later time by the trial court. Covert's fees were later reallocated in an agreed order on parenting time, with Theodore to pay 70% of the fees going forward and Angela to pay 30%.

¶ 6        After the appointment, Covert performed various tasks as GAL in the case and periodically filed invoices with the trial court for his services. During that same time period, Angela rotated between being represented by an attorney and being self-represented. She also went through periods where her parenting time was suspended temporarily or subject to supervision due to concerns regarding her alleged boyfriend.

¶ 7        In October 2023, Theodore filed an emergency petition for a temporary restraining order and a preliminary injunction relating to certain funds Angela had received as part of a settlement for an accident in which she was involved. Upon receiving the petition, the trial court on its own motion appointed a second GAL, attorney Chuck Roberts, to protect and preserve the interests of the three minor children in the proceedings. The trial court's written order provided, among other things, that Roberts would be paid a $2,500 retainer, that his retainer and fees would be split equally between the parties, and that his retainer and fees could be reallocated at a later time by the trial court. After the appointment, Roberts performed various tasks as the second GAL in the case.

¶ 8        In March 2024, the parties settled their dispute and entered into a marital settlement agreement and a parenting agreement. A judgment of dissolution was entered that incorporated or referred to both agreements. Of relevance to this appeal, the marital settlement agreement provided that Theodore's gross annual income was approximately $85,400, that Angela's imputed income was $30,000, that Theodore would pay Angela maintenance of approximately $300 per month for 27 months, that Theodore would pay Angela child support of approximately

3

$200 per month, that the parties would divide the net proceeds remaining from the sale of the marital home equally, that the parties would pay expenses related to the children equally, that the parties would divide the marital portion of Theodore's retirement account equally, that the parties would split the marital debt with Theodore to pay 60% and Angela to pay 40%, and that the parties would each pay their own attorney fees.

¶ 9        The two GALs were discharged from the case and were given time to file petitions for their fees. Both GALs later filed fee petitions and attached supporting invoices to their petitions. Covert stated in his fee petition that he had spent approximately 47 hours on the case, that the hourly rate that was set for his services by the trial court was fair and reasonable, and that the parties had incurred a total of approximately $12,900 in fees for Covert's services as GAL. Theodore was required by the trial court to pay 70% of the fees (approximately $9,000), Angela was required to pay 30% of the fees (approximately $3,900). Theodore had paid $2,600 of the amount that he owed, and Angela had paid approximately $3,200 of the amount that she owed. Theodore currently owed approximately $6,400 of the remaining balance, and Angela currently owed approximately $600 of the remaining balance (at the current allocation percentages).[1] Roberts stated in his fee petition that he had spent approximately 24 hours on the case, that the hourly rate that was set for his services by the trial court was at or below a fair and reasonable level and that the parties had incurred a total of approximately $5,800 in fees for Roberts's services as GAL. Theodore had paid approximately $2,400 of the amount that he owed, and Angela had paid $1,000 of the amount that she owed. Theodore currently owed approximately

---

[1]The fee petitions contained exact amounts. We have used approximate amounts here at times for the convenience of the reader.

$500 of the remaining balance, and Angela currently owed approximately $1,900 of the remaining balance (at the current allocation percentages).

¶ 10    While the fee petitions were pending, Theodore filed a motion for reallocation of the GAL fees between the parties. In the motion, Theodore asked the trial court to reallocate the fees so that Angela would be required to pay 70% and Theodore would be required to pay 30%. In support of that request, Theodore asserted that: (1) the majority of the GAL fees were incurred because of Angela's "erratic behavior and dishonest communications with the [co-GALs], the parties' children, and [Theodore]"; (2) although Theodore was employed, he lacked sufficient resources to be responsible for 70% of the GAL fees; and (3) Angela had adequate resources to pay 70% of the GAL fees because in the parties' marital settlement agreement, Angela was awarded maintenance, child support, 50% of the marital assets, and was only required to pay 40% of the marital debt.

¶ 11    In June 2024, the court held a hearing on the fee petitions and on Theodore's motion for reallocation of GAL fees. Both parties were present at the hearing through their respective attorneys, but neither party was present in person. Angela (through her attorney) opposed Theodore's motion for reallocation and pointed out that she had been given a fee waiver that applied to GAL Covert's fees. The fee waiver had expired and was not in effect when GAL Roberts was appointed. Theodore (through his attorney) argued that Angela had waived the fee waiver by making payments to the GALs. Neither party challenged the amount, fairness, or reasonableness of the fees. At the conclusion of the hearing, the trial court found that Angela had waived the fee waiver and also commented that a *laches* argument could possibly be made by Theodore as well. The trial court granted the two fee petitions in full, reallocated the GAL fees equally between the parties, and entered judgments against the parties for the outstanding GAL

5

fees they each owed. In making its ruling, the trial court noted that much of the litigation in this case related to the emergency motions filed by Theodore as the result of Angela's conduct and because of concerns over Angela's alleged boyfriend. Angela appealed the trial court's ruling.

¶ 12                                    II. ANALYSIS

¶ 13                                A. GAL Covert's Fees

¶ 14    As her first point of contention, Angela argues that the trial court erred in requiring her to pay a portion of GAL Covert's fees, even though she had previously obtained a full fee waiver from the trial court that should have applied to those fees. In support of that argument, Angela asserts that the trial court's underlying finding—that Angela had purposefully or impliedly waived her right to the fee waiver—was incorrect because Angela did not knowingly, voluntarily, or inadvertently do so and because Theodore failed to present any evidence that showed that Angela had done so. Angela acknowledges that despite being granted a full fee waiver, she paid most of Covert's fees but contends that doing so did not constitute a waiver of her right to assert the fee waiver because she had been ordered by the trial court to pay the fees and did not, therefore, pay the fees voluntarily. For those reasons, Angela asks that we reverse the trial court's finding that Angela had waived the fee waiver, that we reverse the trial court's ruling requiring Angela to pay a portion of GAL Covert's fees, that we vacate the judgment that was entered against Angela and in favor of Covert for the remaining balance owed by Angela. She also asks that we order Theodore to pay 100% of Covert's fees, and that we order that Angela be reimbursed by either Theodore or Covert for the GAL fees that Angela paid to Covert.

¶ 15    Theodore argues that the trial court's ruling requiring Angela to pay a portion of GAL Covert's fees was proper and should be upheld. Theodore contends first, that (1) Angela waived her right to assert the fee waiver because she did not object to the appointment of GAL Covert or

6

to the initial requirement that she pay half of Covert's retainer; (2) she made no attempt to vacate the appointment or to seek reconsideration, clarification, or other relief from the trial court as to the appointment of Covert or the payment of Covert's fees; (3) she voluntarily made payments to Covert; and (4) she did not raise the issue of the fee waiver until the June 2024 hearing on the GAL fee petitions. Second, Theodore maintains that the fee waiver did not apply because Angela later obtained counsel and was no longer self-represented as required by the fee waiver statute. Third and finally, Theodore contends that Angela was barred by *laches* from asserting the fee waiver as a defense to the petitions for fees and the motion to reallocate fees. According to Theodore, *laches* applies in this case because if Angela had asserted her fee waiver defense promptly, Theodore and/or the GALs could have sought guidance from the trial court or could have moved to have the GAL appointments vacated. Theodore asserts, therefore, that Angela is not entitled to have all of the fees due Covert assessed against Theodore or to be reimbursed for any portion of Covert's fees that were paid by Angela. Thus, Theodore asks this court to affirm the trial court's ruling requiring Angela to pay a portion of GAL Covert's fees.

¶ 16    In reply, Angela repeats many of her same assertions. In addition, Angela contends that the *laches* doctrine does not apply in this case because she did not delay in raising her right to the fee waiver for any great length of time. Angela also contends that she raised the issue of the fee waiver at the appropriate point in the proceedings (the hearing on GAL fee petitions), that Theodore was not prejudiced by Angela's alleged failure to raise the issue earlier, and that Theodore cannot make arguments on behalf of GAL Covert.

¶ 17    Waiver and *laches* are two different equitable doctrines that a party may assert to try to prevent, in the interests of justice and fairness, an opposing party from raising or maintaining a particular claim, right, or defense. See *Mollihan v. Stephany*, 52 Ill. App. 3d 1034, 1041 (1977)

7

(waiver); *Tully v. State*, 143 Ill. 2d 425, 432 (1991) (*laches*). Waiver is the voluntary and intentional relinquishment of a known right and may be either express or implied. See *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 321 n.2 (2008); *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004); *Lehman v. IBP, Inc.*, 265 Ill. App. 3d 117, 119 (1994). An implied waiver, such as the one alleged in the instant case, occurs when the conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive the particular right at issue. *Home Insurance Co*, 213 Ill. 2d at 326; *Lehman*, 265 Ill. App. 3d at 119. For an implied waiver to exist, there must be a clear, unequivocal, and decisive act by the person alleged to have committed the waiver—mere inaction is not sufficient. *Lehman*, 265 Ill. App. 3d at 120. The party asserting waiver bears the burden of proof to show that a waiver has occurred. *Id.* The determination of whether a person's actions are sufficient to constitute waiver is a question of law that is subject to a *de novo* standard of review on appeal. *Matschke v. Uropartners, LLC*, 2023 IL App (1st) 221112, ¶ 47, appeal denied, 226 N.E.3d 30 (2024).

¶ 18        *Laches*, on the other hand, precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. *Tully*, 143 Ill. 2d at 432; *Tillman v. Pritzker*, 2021 IL 126387, ¶ 25 (stating that *laches* is an equitable defense that is asserted against a party who has knowingly slept on his rights for a great length of time). The existence of *laches* depends on whether, under all the circumstances of a particular case, a plaintiff is chargeable with a lack of due diligence in failing to institute proceedings or to assert a right earlier. See *Tillman*, 2021 IL 126387, ¶ 25. The doctrine of *laches* is founded upon the equitable principle that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of an opposing party. *Id.*; *Tully*, 143 Ill. 2d at 432. For a finding of *laches* to be made, the following two elements must be present: (1) a lack of due diligence by the

party asserting the claim, right, or defense (the party against whom *laches* is being asserted), and (2) prejudice to the opposing party resulting from the delay. *Tillman*, 2021 IL 126387, ¶ 25; *Tully*, 143 Ill. 2d at 432. Whether *laches* is applicable depends upon the facts and circumstances of each case (*Tillman*, 2021 IL 126387, ¶ 25) and is generally a discretionary decision to be made by the trial court (*Van Milligan v. Board of Fire & Police Commissioners of Village of Glenview*, 158 Ill. 2d 85, 91 (1994)).

¶ 19      In the present case, after reviewing the record and considering the legal principles set forth above, we conclude that Angela was barred by the doctrines of waiver and *laches* from asserting or maintaining her fee waiver as to GAL Covert's fees. The record shows that despite having applied for and obtained a fee waiver from the trial court, Angela did not object, call the matter to the court's attention, or seek clarification from the court after the court entered its order requiring Angela to pay a portion of GAL Covert's fees (the fee waiver did not apply to GAL Roberts). In addition, and more significantly, Angela paid most of her share of Covert's fees after the initial payment order was entered. Such conduct by Angela was inconsistent with any intention other than the intention to waive her right to assert the fee waiver as to GAL Covert's fees and constituted an implied waiver of her right in that regard. See *Home Insurance Co.*, 213 Ill. 2d at 326 (indicating that an implied waiver occurs when the conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive the particular right at issue); *Lehman*, 265 Ill. App. 3d at 119 (same). Furthermore, by not promptly asserting her right to the fee waiver for several months despite being aware that Covert was performing GAL services in the case, Angela prejudiced both Theodore and Covert. Had Theodore or Covert known that Angela was going to assert the fee waiver as to Covert's fees, they could have promptly sought to address the matter with the trial court before the work was performed and the

9

fees were incurred. Thus, fairness in this case dictates that Angela should also be barred under the doctrine of *laches* from asserting her fee waiver as to Covert's GAL fees. See *Tully*, 143 Ill. 2d at 432 (recognizing that *laches* precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party); *Tillman*, 2021 IL 126387, ¶ 25 (stating that *laches* is an equitable defense that is asserted against a party who has knowingly slept on his rights for a great length of time). Accordingly, we affirm the trial court's ruling requiring Angela to pay a portion of GAL Covert's fees. Having reached that conclusion, we need not address Theodore's other contention—that the fee waiver did not apply because Angela later obtained an attorney and was no longer self-represented.

¶ 20                                   B. GAL Roberts's Appointment and Fees

¶ 21          As her second point of contention on appeal, Angela argues that the trial court erred in appointing GAL Roberts, in awarding GAL fees to Roberts, and in allocating those fees equally between the parties.[2] In support of that argument, Angela asserts first that Roberts should not have been appointed or awarded fees as a second GAL in this case because the appointment was unnecessary (no allegation was made that GAL Covert had acted improperly or had failed to do his job), was not requested by either party (Roberts was appointed by the trial court on its own motion), and was a financial burden to Angela. Second, Angela asserts in the alternative that because of the disparity in the parties' incomes and the division of debt in the marital settlement agreement, the trial court should not have allocated the fees equally between the parties and should have, instead, allocated 100% or a large percentage of the fees to Theodore. For those reasons, Angela asks that we vacate the order appointing GAL Roberts, the order awarding fees

---

[2]Angela's fee waiver had expired before Roberts was appointed and was not renewed. Thus, Angela does not assert in this appeal that the fee waiver applied to Roberts's fees.

10

to Roberts, and the judgment that was entered for Roberts and against Angela for the remaining fees that were owed by Angela. In the alternative, Angela asks that we modify the reallocation order to require Theodore to pay 100% or a large percentage of GAL Roberts's fees.

¶ 22 Theodore argues that the trial court's orders regarding the appointment of GAL Roberts and the award and allocation of Roberts's fees were proper and should be upheld. In support of that argument, Theodore makes three main contentions. First, Theodore contends that Angela's assertion—that the trial court erred in appointing Roberts as a second GAL in the case—should be rejected outright because Angela cited no authority in support of that assertion in her brief on appeal. Second, Theodore contends that Angela waived any objection to the appointment of Roberts or is barred by the doctrine of *laches* from making any such argument now because she never moved to have the order appointing Roberts reconsidered or vacated and because she paid some of Roberts's fees after the initial appointment order was entered. Third, Theodore contends that the allocation of GAL Roberts's fees equally between the parties was a proper exercise of the trial court's discretion that was based upon the court's familiarity with the case, the parties, and the issues presented. Based upon those three contentions, Theodore asks that we affirm the trial court's orders appointing GAL Roberts, awarding fees to Roberts, and reallocating those fees equally between the parties.

¶ 23 A trial court's rulings on whether to appoint a GAL, whether to approve a GAL's request for fees, and how to allocate the payment of a GAL's fees between the parties will not be reversed on appeal absent an abuse of discretion. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 19 (appointment of a GAL); *In re Marriage of Soraparu*, 147 Ill. App. 3d 857, 864 (1986) (allowance and amount of fees); *In re Estate of K.E.S.*, 347 Ill. App. 3d 452, 468 (2004) (allocation of fees). The threshold for finding an abuse of discretion is a high one and will not be

11

overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 24        Section 506 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/506 (West 2024)) provides the trial court with the authority to appoint a GAL for a minor child or minor children in a dissolution proceeding, to award fees to that GAL, and to allocate the payment of those fees between the parties as appropriate. *Soraparu*, 147 Ill. App. 3d at 864. In determining the proper amount of GAL fees to be awarded, the trial court considers several factors, including the facts and circumstances of the case; the parents' circumstances; the skill and standing of the GAL; the importance, novelty, and difficulty of the issues raised; the degree of management responsibility; the time and labor involved; the usual and customary fees in the community for such work; and the benefits to the client. *Id.* In addition to those factors, when the trial court is deciding upon the proper allocation of fees between the parties, it should also consider the financial resources of the parties and which party brought about the need for the GAL fees. *In re Marriage of Patel & Sines-Patel*, 2013 IL App (1st) 112571, ¶¶ 147-148.

¶ 25        Upon reviewing the record in the present case, we conclude that the trial court's rulings—appointing GAL Roberts, awarding GAL fees to Roberts, and allocating the payment of those fees equally between the parties—were properly made. We reach that conclusion for two reasons. First, Angela is barred by the doctrines of waiver and *laches* from challenging the appointment of, and award of fees to, Roberts. Despite learning that Roberts had been appointed and being aware that he was performing GAL services in the case, Angela did not raise her concerns with the trial court regarding the necessity of that appointment or object until the hearing on the fee petitions. Had Angela objected promptly, the trial court could have addressed

12

those objections before the fees were incurred. Not only did Angela fail to raise any concerns, but she also paid a portion of Roberts's fees after the initial appointment order was entered. Under the circumstances of this case, therefore, it would have been unjust and unfair to allow Angela to challenge the appointment of, and award of fees to, Roberts. See *Mollihan*, 52 Ill. App. 3d at 1041 (indicating that waiver is an equitable principle that is invoked to further the interests of justice whenever a party initially relinquishes a known right or acts in a manner that warrants the inference of such a relinquishment); *Tully*, 143 Ill. 2d at 432 (recognizing that *laches* precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party).

¶ 26    Second, the trial court's allocation of the payment of Roberts's fees equally between the parties was appropriate under the circumstances. Although Theodore's income (approximately $85,400 per year) was substantially more than Angela's (between approximately $10,000 and $30,000 per year), Theodore was also paying monthly maintenance and child support to Angela and was required to pay a greater percentage of the parties' marital debt (60% to be paid by Theodore and 40% to be paid by Angela). In addition, it is apparent from the parties' marital settlement agreement, which required the parties to split the marital assets and the expenses of the children relatively equally and for each party to pay his or her own attorney fees, that the parties believed that an equal division of most items was fair and reasonable. Finally, the trial court specifically noted in making its ruling that much of the litigation on the emergency motions was caused by Angela and because of concerns over her alleged boyfriend, a factor that it was appropriate for the trial court to consider in making its ruling on GAL fees. See *Patel & Sines-Patel*, 2013 IL App (1st) 112571, ¶¶ 147-148 (indicating that when allocating the payment of fees between the parties, the trial court should consider which party brought about the need for

13

the fees). Thus, the trial court acted well within its discretion in the present case when it divided Roberts's GAL fees equally between the parties. Accordingly, we affirm the trial court's rulings regarding the appointment of GAL Roberts, the award of fees to Roberts, and the allocation of the payment of those fees equally between the parties.

¶ 27       As a final matter, Theodore in his appellate brief "urge[s]" this court to "make plain" that section 5-105 of the Code does not strip the trial court of the discretion to determine what expenses are necessary for a self-represented litigant to commence, prosecute, defend, or enforce relief in a civil action. We decline to make such a ruling since it is unnecessary for this court to decide that issue to resolve this appeal. It is well settled that the appellate court will not decide moot or abstract questions or render advisory opinions. See *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990).

¶ 28                                   III. CONCLUSION

¶ 29       For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 30       Affirmed.