2016 IL App (1st) 143853

No. 1-14-3853

Opinion filed March 15, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| HERBERT P. CARLSON, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | |
| v. | No. 13 L 12010 |
| THE REHABILITATION INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation, and SUPERIOR AIR GROUND AMBULANCE SERVICE, INC., | The Honorable Raymond W. Mitchell, Judge, presiding. |
| Defendants-Appellees. | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1    A nonemergency wheelchair van taking plaintiff Herbert Carlson from one medical facility to another facility located a little over a mile away got involved in a minor accident (the van struck the rearview mirror on a CTA bus). Carlson remained in the van for two to three hours before substitute transportation arrived. Carlson sued the transport company for negligence and breach of contract and its parent corporation for breach of contract. Before trial, however, Carlson voluntarily dismissed the contract claims, and went to trial only against the transport company on the negligence claim. A jury found against Carlson.

¶ 2 A year later this suit arose when Carlson again sued the parent corporation of the transport company and also sued the medical facility from which he had been taken for breach of contract, propounding a third-party beneficiary theory of standing. Rejecting this argument, the trial court granted both defendants' motions to dismiss. Moreover, the trial court found the 2013 claim was barred by the doctrine of *res judicata* and collateral estoppel. We affirm. Carlson lacked standing to sue as he was not a party to the contract nor was he a third-party beneficiary of the contract between the medical facility and the transport company. Additionally, Carlson's claim arose from the same occurrence that served as the basis for the earlier negligence lawsuit against the transport service; therefore, *res judicata* operated to bar the claim against its parent company as a party in privity.

¶ 3                                   BACKGROUND

¶ 4 In 2000, defendants The Rehabilitation Institute of Chicago (RIC) and Superior Air Ground Ambulance Service, Inc., executed a "Transportation Service Agreement" providing for emergency and nonemergency transport of patients "to other facilities and locations." If non-emergency transport was needed, the contract stated Superior's wholly owned subsidiary would provide "Medicar Service (Courtesy Van) transport services" for nonemergency routine transportation.

¶ 5 A Medi-Car wheelchair van transferring Carlson from RIC to Warren Barr Pavilion clipped the mirror of a CTA bus. Police were summoned but left after 15 minutes because there were no injuries or damages other than to the bus mirror. Medi-Car waited for an "accident relief" van to complete the trip, forcing Carlson to remain in the van for two to three hour under less than ideal circumstances.

¶ 6        Carlson sued Medi-Car, alleging it was negligent during the incident (case No. 08-L-2534). In 2010, Carlson amended his complaint to add Superior under a breach of contract theory, but in 2012 voluntarily dismissed Superior under section 2-1009 of the Code of Civil Procedure (Code). 735 ILCS 5/2-1009 (West 2008). A jury found Medi-Car was not negligent. (Judge Drella Savage presided over the trial).

¶ 7        In 2013, Carlson again sued Superior, alleging breach of contract based on his status as a third-party beneficiary (case No. 13-L-12010). In March 2014, Carlson amended his complaint to add RIC. Carlson alleged that Medi-Car was a wholly-owned subsidiary of Superior and asserted a breach of contract claim against RIC as well as Superior.

¶ 8        Additionally, Carlson sought sanctions against Superior's attorneys for "intentionally refusing" to disclose relevant information to his attorney and to the trial court, referring to an order entered in the earlier case against Medi-Car (case No. 08-L-2534). The referenced undisclosed information appears to be Judge Savage's ruling that Carlson was a third-party beneficiary. The record also contains Judge Savage's May 3, 2011 order denying Carlson's motion for leave to amend his amended complaint to add a prayer for relief seeking punitive damages.

¶ 9        On November 17, 2014, Judge Mitchell granted RIC's and Superior's motions to dismiss brought under section 2-619 of the Code. 735 ILCS 5/2-619 (West 2012). At the hearing on Carlson's motion to reconsider this order, Judge Mitchell remarked on the possibility that another judge had reached a different conclusion on the third-party beneficiary status, "To me, it doesn't really make a difference in mind [*sic*]. It is just not a third-party beneficiary contract."

¶ 10        ANALYSIS

¶ 11    The standard of review of motions to dismiss under either section 2-615 or section 2-619 is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000). Additionally, because we review the trial court's judgment, not its rationale, we may affirm for any reason supported by the record regardless of the basis cited by the trial court. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 30.

¶ 12    A motion to dismiss under section 2-619 motion admits the legal sufficiency of the complaint and raises defects, defenses, or other "affirmative matter" which appear on the face of the complaint or are established by external submissions which act to defeat the plaintiff's claim. *Neppl*, 316 Ill. App. 3d at 584. In ruling on the motion, the trial court must take all properly pleaded facts as true, and the complaint should not be dismissed unless it appears that no set of facts under the pleadings can be proved that would entitle the plaintiff to recover. *Barbra Village of Bensenville*, 2015 IL App (2d) 140337, ¶ 19. If a cause of action is dismissed under section 2-619 motion, the questions on appeal are whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law. *La Salle National Bank v. City Suites, Inc.,* 325 Ill. App. 3d 780, 789 (2001).

¶ 13    To establish a breach of contract claim, a plaintiff must prove the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and damages or injury to the plaintiff resulting from the breach. *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68. In third-party beneficiary contracts, a party (the promisor) promises to render a certain performance not to the other party (promisee), but rather to a third person (beneficiary). *MBD Enterprises, Inc. v. American National Bank of Chicago*, 275 Ill. App. 3d 164, 168 (1995).

¶ 14    Illinois recognizes two types of third-party beneficiaries, intended and incidental. *Hacker v. Shelter Insurance Co.*, 388 Ill. App. 3d 386, 394 (2009). An intended beneficiary is intended by the parties to the contract to directly benefit for the performance of the agreement; under the contract an intended beneficiary has rights and may sue. *Id*. An incidental beneficiary has no rights and may not sue to enforce them. *Id*. "Liability to a third-party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." *Ball Corp. v. Bohlin Building Corp*., 187 Ill. App. 3d 175, 177 (1989). Moreover, while circumstances surrounding the execution of the contract may be considered, the alleged third-party beneficiary must be expressly named in the contract. *Paukovitz v. Imperial Homes, Inc*., 271 Ill. App. 3d 1037, 1039 (1995); see also *Estate of Willis II v. Kiferbaum Construction Corp*., 357 Ill. App. 3d 1002, 1008 (2005) (in Illinois presumption against construing contract in favor of third-party beneficiary status can only be overcome by "an implication so strong as to be practically an express declaration." (citing *Ball Corp*., 187 Ill. App. 3d at 177)). Thus, "[t]he operative question is whether the parties to the contract intended to confer a direct benefit on the purported third-party beneficiary." (Emphasis omitted.) *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 27.

¶ 15    Without a third-party beneficiary status, "a litigant lacks standing to attack an assignment to which he or she is not a party." *Id*.¶ 15. Thus, a challenge to the plaintiff's third-party beneficiary status is a proper affirmative defense in a section 2-619 motion to dismiss.

¶ 16    The contract between RIC and Superior contains no language indicating that the parties intended to benefit either "patients" in general, or Carlson in particular. We agree with the trial court's statement that "the mere reference to a party in a contract will not confer third-party

beneficiary status." In our view, the contract as a whole expresses only the intent of RIC to provide for patient transport using the services of Superior Ambulance. In the absence of an express provision, we find that the contract between Superior and RIC did not intend to confer a direct benefit to the "patient" being transported, rather, the benefit was, as the trial court found, the "transportation of patients in exchange for payment." Carlson was not an intended third-party beneficiary, and thus lacks standing to sue.

¶ 17 Finally, we reject Carlson's argument that a "ruling" by the judge in the earlier case on his status as third-party beneficiary to the contract between RIC and Superior binds a successor trial judge. As Superior points out, our review of a motion to dismiss is *de novo*. Carlson relies on *Balciunas v. Duff*, 94 Ill. 2d 176 (1983), where the Illinois Supreme Court declined to issue a writ of *mandamus* to regulate discovery in the trial court, holding that a successor judge should have deferred to the discretion of another judge's earlier ruling on discovery motions. We fail to see how *Balciunas* applies here. Even if Carlson's representation of Judge Savage's "ruling" was accurate (which our review of the record does not support), the "ruling" would have no binding authority as to our *de novo* review.

¶ 18                               *Res Judicata* and Collateral Estoppel

¶ 19 Alternatively, Carlson argues that the equitable doctrines of *res judicata* and collateral estoppel do not apply.

¶ 20 Courts often describe *res judicata* as claim preclusion and collateral estoppel as issue preclusion. See *In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519, ¶ 22. " '[*R*]*es judicata*, while similar to collateral estoppel, deals with the same claim or *cause of action*, while collateral estoppel deals with identical *issues*.' " (Emphases in original.) *Schandelmeier-Bartels v. Chicago Park District*, 2015 IL App (1st) 133356, ¶ 35 (quoting *Illinois Health Maintenance*

*Organization Guaranty Ass'n v. Department of Insurance*, 372 Ill. App. 3d 24, 41 (2007)). Collateral estoppel may apply both to prior findings of fact and prior determinations of law. See *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 79, (2001).

¶ 21    Given our resolution of Carlson's third-party beneficiary status, we need not consider the argument that *res judicata* would not bar this action against both RIC and Superior. Nevertheless, we address *res judicata* as it applies to Superior as a party in privity with Medi-Car.

¶ 22    *Res judicata* prevents a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 328 (2009). Under the doctrine, a final judgment on the merits rendered by a "court of competent jurisdiction" bars a later suit between the same parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). Whether a claim is barred under the doctrine of *res judicata* presents a question of law, which we review *de novo*. *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004).

¶ 23    The doctrine has three requirements: (1) identity of parties or their privies in the lawsuits; (2) identity of causes of action; and (3) final judgment on the merits rendered by a court of competent jurisdiction. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). Once these three requirements have been satisfied, *res judicata* "bars not only what was actually decided in the first action but also whatever could have been decided." *Id*. "[T]he facts as they exist at the time of judgment determine whether *res judicata* bars a subsequent action." (Emphasis and internal quotation marks omitted.) *Doe v. Gleicher*, 393 Ill. App. 3d 31, 39 (2009).

¶ 24    The first requirement provides the basis for a finding of privity (*Singer v. Brookman*, 217 Ill. App. 3d 870, 876 (1991)); in other words, privity exists between parties who adequately

represent the same legal interests. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992). The identity of interest, not the nominal identity of the parties, controls. *Indian Harbor Insurance Co. v. MMT Demolition, Inc.*, 2014 IL App (1st) 131734, ¶ 41. Medi-Car, a wholly owned subsidiary of Superior, undoubtedly had the same interests as Superior, regardless of the nature of the claim. The fact that Medi-Car was set up as a separate legal entity does not destroy the identity of interests.

¶ 25 Quoting *Gass v. Anna Hospital Corp.*, 392 Ill. App. 3d 179, 185 (2009), Carlson argues that Superior and Medi-Car are not the same because corporations are legal entities "separate and distinct from its shareholders, directors and officers and from other corporations with which it may be connected." *Gass* addressed a completely different equitable doctrine, piercing the corporate veil, and does not negate the concept of identity of interests.

¶ 26 As to the second requirement, identity of cause of action, Carlson asserts that his cause of action sounds in contract, rather than tort as in the 2008 lawsuit. Illinois courts use the transactional test to determine whether causes of action are the same for *res judicata* purposes. *River Park*, 184 Ill. 2d at 310. Under this test, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they seek different theories of relief. *Id*. at 311.

¶ 27 "Where the same factual allegations form the basis for the two allegedly different causes of action, the fact that a party proceeds on different theories or seeks different relief does not prevent the operation of *res judicata*." *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 652 (1989) (citing *Barth v. Reagan*, 146 Ill. App. 3d 1058, 1066 (1986)). See *Singer v. Brookman*, 217 Ill. App. 3d 870, 877 (1991) ("Plaintiffs' actions are really just a different means to the same end and are identical for purposes of *res judicata*."). The 2008 complaint and the

2013 complaint set forth causes of action arising from the same set of operative facts. Despite Carlson's attempt to differentiate the two causes of action, the complaints allege the same underlying injury resulting from the same occurrence.

¶ 28    As a matter of public policy, a plaintiff is not permitted to engage in claim-splitting. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 474 (2008). This rule against claim-splitting flows from the principle that litigation should have an end and no person should be unnecessarily harassed with a multiplicity of lawsuits. *Piagentini v. Ford Motor Co*., 387 Ill. App. 3d 887, 891 (2009); *Doe v. Gleicher*, 393 Ill. App. 3d 31, 35 (2009). "To allow the splitting of claims or causes of action even in the absence of a ruling on the merits of all claims or all causes of action is contrary to the policy consideration central to *res judicata* of promoting finality." *Matejczyk v. City of Chicago*, 397 Ill. App. 3d 1, 9 (2009).

¶ 29    The facts underlying Carlson's claim arose from the same incident—Carlson being forced to remain in a medical transport van after a minor traffic accident. Couching the claim against Superior in contract terms *vis-à-vis* a claim in tort against Medi-Car does not change the core of operative facts. See *River Park*, 184 Ill. 2d at 311. There was one incident, one plaintiff, and one claim. Carlson pursued the negligence count against Medi-Car in the 2008 case while voluntarily dismissing the breach of contract count against Superior. Carlson's effort to separate the two claims constitutes a classic case of claim-splitting which arose when he chose to dismiss his original complaint against Superior. Having done so, he cannot now be heard to complain.

¶ 30    Finally, the doctrine of *res judicata* requires a final judgment on the merits. A jury reached a verdict in the first lawsuit, finding for Medi-Car and against Carlson. Because this was not the resolution Carlson hoped for, he sought relief in a different manner and switched gears to reassert his claim against Superior and to bring in RIC as a defendant. The verdict in the 2008

case, however, fulfills the requirement of a final judgment on the merits to bar Carlson's later claim.

¶ 31    Equity dictates that the doctrine of *res judicata* should only be applied as fairness and justice require, but not where it would be fundamentally unfair to do so. *Piagentini*, 387 Ill. App. 3d at 890. The three elements of *res judicata* are present, and Carlson had a fair and reasonable opportunity to have fully litigated his claim in the original lawsuit. We affirm the dismissal against Superior on this basis.

¶ 32    Regarding RIC, the first requirement of parties in privity would not be fulfilled and the doctrine would not prevent the cause going forward insofar as it pertains to RIC. But, as discussed, Carlson's assertion of his status as third-party beneficiary fails, and, therefore, the trial court properly dismissed his claim against RIC on that basis.

¶ 33    Carlson also argues that collateral estoppel would not bar his second lawsuit. Having determined that Carlson lacked standing to sue either RIC or Superior, we need not address the affirmative defense of collateral estoppel.

¶ 34                                    Sanctions

¶ 35    Carlson challenges the trial court's denial of his motion for sanctions. He accuses Superior's attorneys of intentionally refusing to disclose relevant fact information to his attorney and to the trial court as it relates to a ruling by Judge Savage in the 2008 case.

¶ 36    Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) provides that an appellant's brief shall contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Moreover, "[t]he appellate court is not a repository into which an appellant may foist the burden of argument and research." *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37; see also

*Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented \*\*\*."). Carlson cites no authority. We agree with Superior that Carlson has forfeited this issue.

¶ 37 In any event, the determination of whether to impose sanctions under Rule 137 lies with the sound discretion of the trial court; the decision to impose or deny sanctions is entitled to great weight on appeal and will not be disturbed on review absent an abuse of discretion. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 73 (2009). The record contains an order entered in August 2014 and withdrawn after Carlson filed his motion for reconsideration. Carlson appeals from the replacement order entered in November 2014. That order is detailed and well-reasoned. Regarding sanctions, the order read "Finally, both Plaintiff and Defendant Superior, at various points, invoke Rule 137. Sanctions are not warranted on the record before the Court and all requests are denied."

¶ 38 Although the court did not address each of the allegations of misconduct raised by the parties, it is apparent that the trial court heard and considered the arguments from both parties and knew the case's lengthy history before ruling. See *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 245-46 (2000) (affording deference to trial court's ruling on motion for Rule 137 sanctions even though court did not address each allegation of misconduct individually because it was apparent court was aware of history of case and gave consideration to allegations as a whole). Accordingly, we find that the trial court set forth a sufficient basis for its ruling, and Carlson's request for sanctions was properly denied.

¶ 39 Affirmed.