2026 IL App (1st) 241911

SECOND DIVISION
May 26, 2026

No. 1-24-1911

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| 3 R HEALTH CARE PRODUCTS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 2024 L 1538 |
| | ) | |
| CARDINAL HEALTH 110, LLC, and | ) | |
| THE DEPARTMENT OF CENTRAL | ) | Honorable |
| MANAGEMENT SERVICES, | ) | Daniel J. Kubasiak, |
| | ) | Judge Presiding |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     In 2021, Illinois sought bidders for a long-term commitment to supply various state agencies with pharmaceutical goods. The bidding statute required that bidders subcontract a certain amount of work to disadvantaged business enterprises, or "DBEs." Plaintiff, 3R Health Care Products, Inc. ("3R"), is a DBE that sought to be a subcontractor for the distributor ultimately awarded the contract, defendant Cardinal Health 110, LLC ("Cardinal"). But 3R never got that chance, as Cardinal obtained a full waiver of the contract's DBE goal.

¶ 2     3R alleges the bidder obtained this DBE waiver by misrepresenting 3R's capabilities to the State. 3R also alleges it was the only DBE qualified to perform the work. Thus, absent those misrepresentations, 3R alleges, Cardinal would have been obligated to include 3R in its bid.

¶ 3    In 2024, after Cardinal was awarded the contract, 3R sued to recover for the portion of the contract to which it was allegedly entitled. 3R sought, among other things, damages for breach of contract and tortious interference with business expectancy, as well as a declaration that Cardinal's contract with the State was invalid.

¶ 4    The trial court dismissed the complaint, finding that 3R did not have standing to bring its claims because the DBE "goal" was just that—a goal, not a legal obligation. So 3R had no cognizable right to a subcontract or to a declaration that the contract was void, nor did 3R allege a cognizable business expectancy.

¶ 5    We uphold the dismissal of the contract and declaratory-judgment counts, as 3R was not a third-party beneficiary to the contract between Cardinal and the State and thus has no standing to recover for a breach of that contract, to seek a rescission of that contract, or to obtain a declaration that the contract is invalid.

¶ 6    But we reverse the dismissal of the tortious-interference claim. The allegations of the complaint are sufficient, at the pleading stage, to allege that Cardinal intentionally sabotaged 3R's statutory right to good-faith consideration as a DBE subcontractor. This right, plus the allegation that plaintiff was the *sole* qualified subcontractor, is sufficient to plead an actionable business expectancy. We remand for further proceedings.

¶ 7                                   BACKGROUND

¶ 8    As this case is at the pleading stage, we take the facts from the complaint and accept them as true. *Bosch v. NorthShore University Health System*, 2019 IL App (1st) 190070, ¶ 5.

¶ 9    3R is an Illinois pharmaceutical distributor certified as a DBE under the Business Enterprise for Minorities, Women, and Persons with Disabilities Act, 30 ILCS 575/0.01, *et seq.* (West 2022), which we will call the "BEP Act." (The complaint alleges that 3R's principal

- 2 -

owner and operator is Dr. Helen Randolph, is an African American woman.) Cardinal is a large nationwide pharmaceutical distributor.

¶ 10    In June 2021, the Department of Central Management Services (CMS) issued a request for proposal (RFP) seeking bids for a contract "to enable CMS, governmental units, and qualified not-for-profit agencies to purchase drugs and pharmaceuticals on an as needed basis during the contract period." This June 2021 RFP contained an 8% DBE participation goal.

¶ 11    Under the BEP Act, to meet the DBE goal, bidders must either be a certified DBE themselves or subcontract with a certified DBE. *Id.* § 2(A)(11). Or the bidder may obtain a waiver of the DBE goal if the bidder demonstrates it made "good faith efforts" to secure DBE participation but was unsuccessful. *Id.* § 7(3)(a). A bidder would not be considered to have made good-faith efforts unless they contacted every registered DBE relevant to the RFP. A bidder's use of DBEs or attempt to solicit and request for waiver must be contained in a "utilization plan." *Id.* § 4(e).

¶ 12    That same month, June 2021, Cardinal contacted 3R to solicit 3R's participation as a certified DBE. After their meeting, Cardinal rejected 3R because it felt they were direct competitors and "it would not benefit [Cardinal] to use [3R's] services." Cardinal then submitted its bid and sought a waiver of the DBE goal. In August, CMS granted the waiver, and Cardinal was awarded the contract. 3R claims the waiver was granted "based on [Cardinal's] misrepresentations in its DBE utilization plan."

¶ 13    In September, 3R protested the award of the contract to Cardinal because it "did not make good faith efforts to allow [3R's] participation in the First Contract." CMS overruled 3R's protest but nevertheless cancelled the first award "based on [3R's] First Protest."

¶ 14    In October, CMS re-issued the RFP, which was identical except that the DBE participation goal was raised from 8% to 9%. In November, Cardinal once again solicited 3R as a potential DBE candidate. 3R reiterated its ability to fulfill the subcontract and submitted a participation plan in November. 3R and Cardinal then met once again.

¶ 15    In that meeting, Cardinal expressed concern about "potential regulatory issues" in a subcontract between the two. 3R attempted to dispel these concerns, explaining that it "was already performing these duties" in a separate contract with the Department of Corrections, or "IDOC." Cardinal then asked only for the details of 3R's IDOC contract, "rather than [3R's] ability to perform under the terms of the Second Contract—which [3R] was ready, willing, and able to comply with."

¶ 16    In December, Cardinal once again rejected 3R's participation. While it was still concerned that 3R was a competing distributor, it assured 3R that it was not the reason for rejection this time around. Instead, Cardinal identified two concerns. First, because 3R was a distributor, 3R would not be able to satisfy the one-day turnaround required by the RFP. That turnaround was far tighter than the four-to-six-day delivery time in 3R's IDOC contract. Second, Cardinal claimed that 3R refused to provide a product list or price quote.

¶ 17    The complaint alleges that each reason was specious. The tighter turnaround under the "Second Contract" was not a problem; just because its IDOC contract allowed for more time did not mean that 3R could not perform a quicker turnaround. And Cardinal was focusing solely on the products 3R delivered to IDOC; Cardinal "did not afford [3R] an opportunity to provide a list of relevant products it could obtain pursuant to the requirements of the Second Contract."

¶ 18    Cardinal once again sought a waiver of the RFP's DBE goal. In the second utilization plan, Cardinal told the State that it contacted all nine certified DBEs relevant to the RFP; five

declined to submit proposals, two were "non-responsive," and "one was rejected for failure to provide information, including proof of licensing after multiple requests and attempts." The plan also stated that 3R could not perform as a subcontractor because of its "inability to meet contract requirements and lack of needed information."

¶ 19    Based on the statements in the utilization plan, Cardinal was again granted a full DBE waiver and was awarded the contract in January 2022. According to 3R, this 10-year contract has a total value "exceed[ing] $600,000,000.00." 3R filed another protest; the protest was again rejected. This time, however, CMS allowed the award to Cardinal to stand.

¶ 20    In February 2024, 3R filed suit. Relevant to this appeal, the complaint alleged breach of contract (count II), tortious interference with business expectancy (count III), and a declaratory judgment that the contract between CMS and Cardinal was invalid (count IV).

¶ 21    The contract claim alleged that, though 3R was obviously not a party to the contract between CMS and Cardinal, 3R was an intended third-party beneficiary due to the rights granted to DBEs under the BEP Act. In much the same vein, the tortious-interference count alleged that 3R's rights as a DBE entitled it to Cardinal's good-faith effort to secure 3R's participation, but Cardinal rejected 3R in bad faith. The declaratory-judgment count alleged that the contract between CMS and Cardinal, including most specifically the DBE waiver, was based on misrepresentations by Cardinal and was thus invalid.

¶ 22    Defendants moved to dismiss, primarily arguing that (1) 3R was not a third-party beneficiary and could not sue for breach of contract, (2) 3R did not have a valid business expectancy because it had no right to participate as a subcontractor, and (3) 3R's declaratory judgment action was improper because it was, in actuality, a claim for rescission.

¶ 23 The circuit court dismissed the complaint with prejudice. The court agreed that 3R was not a third-party beneficiary of the CMS-Cardinal contract. In the court's view, that conclusion defeated both the contract and tortious-interference counts; because 3R was not a third-party beneficiary, the court reasoned, it could not have a reasonable business expectancy. The court further reasoned that the DBE goal was not a legal obligation and that, in any event, 3R failed to plead that it was the only eligible DBE, rendering its claim of damages speculative.

¶ 24 Finally, the court construed the count for declaratory relief as a thinly veiled rescission claim that 3R could not plead, as it was not a party to the contract or a third-party beneficiary. And the court ruled that 3R had no right to challenge the waiver of the DBE goal.

¶ 25 This timely appeal followed.

¶ 26 ANALYSIS

¶ 27 3R argues the court erred in dismissing the relevant counts of the complaint. And even if the court correctly dismissed the claims, 3R says that it should have been allowed to re-plead.

¶ 28 A dismissal under section 2-615 of the Code of Civil Procedure concerns the legal sufficiency of the complaint. See 735 ILCS 5/2-615 (West 2022); *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 11. The complaint should not be dismissed unless no set of facts would entitle the plaintiff to recover. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). We accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. *Quiroz*, 2022 IL 127603, ¶ 11. Our review is *de novo*. *Id.*

¶ 29 I. The Procurement Process and the BEP Act

¶ 30 Running throughout this appeal is the fundamental question whether the BEP Act creates a *goal* of DBE participation or a *mandate*. As we explain below, the BEP Act mandates a *good-faith attempt* at DBE utilization, but it does not mandate ultimate DBE participation.

¶ 31    Our construction of statutes "is guided by familiar, well-established principles." *Tillman v. Pritzker*, 2021 IL 126387, ¶ 17. When the language is clear and unambiguous, we give it its plain, ordinary meaning. *Id.* Our analysis involves the intersection of two laws, the BEP Act and the Illinois Procurement Code, or the "Code" for ease. 30 ILCS 500/1-1 *et seq.* (West 2022).

¶ 32    Procurement, the process by which the State enters into contracts, is governed by the Code and intended to enshrine the "principles of competitive bidding and economical procurement practices" for "all purchases and contracts by or for any State agency." *Id.* § 1-5. The default method of procurement is "by competitive sealed bidding." *Id.* § 20-10(a).

¶ 33    The State issues an invitation for bids that describes the material terms and conditions of the procurement. *Id.* § 20-10(b). The bidding process usually includes a "request for proposal," or "RFP," in which the procuring agency seeks information from bidders on the work. *Id.* § 1-15.75. A bidder's response to the invitation to bid is its "bid." *Id.* § 1-15.01.

¶ 34    The submitted bids are "evaluated based on the requirements set forth in the invitation for bids." *Id.* § 20-10(e). When bidding and evaluation are complete, "[t]he contract shall be awarded *** to the lowest responsible and responsive bidder whose bid meets the requirements and criteria set forth in the invitation for bids." *Id.* § 20-10(g). The contract is the actual agreement between the State and the bidder. *Id.* § 1-15.30.

¶ 35    The Code "is subject to [the] applicable provisions of" the BEP Act. *Id.* § 45-65(5).

¶ 36    The BEP Act was designed to promote the development of businesses owned and operated by minorities and women by encouraging their inclusion in State contracts. 30 ILCS 575/1 (West 2022). It establishes "an aspirational goal" to award a certain percentage of State work to businesses owned by disadvantaged groups. *Id.* § 4(a).

¶ 37 As of 2024, most contracts sought by State agencies contain participation goals. See 30 ILCS 575/3.5 (West 2024). When a contract includes a participation goal, a bidder is required to submit a "utilization plan" with its bid. 30 ILCS 575/4(e) (West 2022). This utilization plan must demonstrate that either (1) the bidder met the DBE goal or (2) the bidder has requested a full or partial waiver of the DBE requirement. *Id.* § 2(A)(11). The failure to include a utilization plan renders the bid "non-responsive." *Id.* § 4(e). A non-responsive bidder cannot be awarded the contract. 30 ILCS 500/20-10(g) (West 2022).

¶ 38 As noted, a bidder may request a waiver of any DBE participation goal "prior to the contract award." 30 ILCS 575/7(3) (West 2022). The bidder must demonstrate that it made a good-faith effort to comply with the goals for DBE participation. *Id.* The RFP here states that, "to be considered as having completed a 'good faith effort', you must contact 100% of all vendors and enter their responses in the BEP Utilization Plan."

¶ 39 Whether to grant a waiver is determined by the "Business Enterprise Council," a council of state officials and private appointees created under the BEP Act. *Id.* §§ 7(3), 5. In determining whether to grant a waiver, the Business Enterprise Council considers the reasons for the requested waiver, including whether a good-faith effort at participation was made, how many waivers the vendor has received previously, and the vendor's historical use of minority businesses. *Id.* § 7(3)(b).

¶ 40 Finally, the law deems it a material breach of the contract, subject to termination or default, if the vendor fails to comply with its DBE utilization plan or gives false or misleading information about its DBE utilization or its good-faith efforts at compliance. *Id.* § 8(2).

¶ 41 To summarize: a bidder must submit a utilization plan with its bid. *Id.* § 4(e); 30 ILCS 500/20-10(g) (West 2022). That utilization plan must demonstrate that either (1) the bidder

complied with the DBE goal in the RFP or (2) the bidder has requested a full or partial waiver of that compliance. *Id.* § 2(A)(11). Before awarding the contract, the Business Enterprise Council grants or denies any request for waiver by determining whether the bidder made a good-faith attempt at compliance with the DBE goal. *Id.* §§ 7(3), 2(A)(13) (defining "good faith effort"). And once the contract is awarded, if the State finds that the contractor provided false information regarding its DBE compliance, the State may deem the contract in material breach. *Id.* § 8(2).

¶ 42    As should be clear by now, a contractor that is not, itself, a DBE must make a good-faith attempt to secure DBE participation as required by the State. That duty is mandatory. But if that good-faith effort does not result in DBE participation and the governmental entity is satisfied with the bidder's good-faith effort, the government may waive DBE participation. A good-faith attempt at DBE inclusion is mandatory, but DBE inclusion itself is not.

¶ 43    Armed with these conclusions, we proceed to consider each individual count.

¶ 44                              II. Breach of Contract

¶ 45    3R's contract claim alleges that Cardinal breached its contract by not complying with the DBE goals required for that contract. Though 3R acknowledges that it was not a party to the contract between CMS and Cardinal, 3R says it was an intended thirty-party beneficiary of the contract and thus has standing to complain of a breach.

¶ 46    The law is clear that " '[o]nly a party to the contract, one in privity with a party to the contract, or a third-party beneficiary of the contract has standing to sue on a contract.' " *Stop NorthPoint, LLC v. City of Joliet*, 2024 IL App (3d) 220517, ¶ 70 (quoting *Haake v. Board of Education for Glenbard Township High School District 87*, 399 Ill. App. 3d 121, 128-29 (2010)). There are two types of third-party beneficiaries, intended and incidental. *Carlson v.*

*Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 14. Because 3R claims to be an intended third-party beneficiary, we train our focus there.

¶ 47 An intended beneficiary of a contract "has rights and may sue" for breach of that contract. *Id.* The question is whether the contracting parties intended to confer a benefit on the alleged third party. *XL Disposal Corp. v. John Sexton Contractors Co.*, 168 Ill. 2d 355, 361 (1995). The law is clear that an intent to confer such status on a non-party to the contract "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Midwest Neurosurgeons, LLC v. F.W. Electric, Inc.*, 2025 IL App (5th) 240957, ¶ 15; see *Holmes v. Federal Insurance Co.*, 353 Ill. App. 3d 1062, 1066 (2004).

¶ 48 That is where 3R runs into problems. Nowhere in the contract between CMS and Cardinal is 3R referenced by name or by category. There is nothing in the contract indicating that 3R or any other DBE is entitled to any portion of the work. And that, of course, is because Cardinal was granted its waiver from the DBE requirement before contracting with Cardinal.

¶ 49 Recall that the Business Enterprise Council's decision to waive or not waive DBE participation comes before the contract is awarded, as part of the bidding process. 30 ILCS 575/4(e), 7(3) (West 2022). So by the time the contract was fully executed, the decision had already been made *not* to include DBEs in the work.

¶ 50 Quite obviously, then, the contract did not list 3R specifically or DBEs in general as subcontractors on this contract. That simple fact distinguishes this case from decisions cited by 3R that found that a DBE was a third-party beneficiary of a contract. See *Advanced Concepts Chicago, Inc. v. CDW Corp.*, 405 Ill. App. 3d 289, 296 (2010) (contract specifically identified plaintiff DBE as subcontractor and also mandated that 40% of work be performed by DBEs

generally); *Level-1 Global Solutions, LLC v. Presidio Networked Solutions Group, LLC*, No. 23 C 2978, 2023 WL 9892111, at *1, *3 (N.D. Ill. Dec. 4, 2023) (contract contained letter of intent and utilization plan identifying plaintiff specifically as DBE); *Organization of Minority Vendors, Inc. v. Illinois Central Gulf R.R.*, 579 F. Supp. 574, 598-99 (N.D. Ill. 1983) (contract listed as "legal requirement" certain " 'minority business enterprise affirmative action program[s]' " and bound railroad to provide MBEs with "maximum opportunity" to participate in contract).

¶ 51    With those undeniable facts, 3R is reduced to arguing that the BEP Act is incorporated into the contract between CMS and Cardinal. So it is, but part of that incorporation is the possibility of a waiver of DBE participation. As we have discussed at length, a waiver of DBE participation is fully consistent with the BEP Act.

¶ 52    The court correctly ruled that the parties to the contract did not intend to confer third-party beneficiary status on 3R. As 3R was neither a party to nor a third-party beneficiary of the contract between CMS and Cardinal, dismissal of the contract count was proper. *Stop NorthPoint*, 2024 IL App (3d) 220517, ¶ 70.

¶ 53                             III. Declaratory Judgment

¶ 54    3R sought a declaration that, because Cardinal misrepresented 3R's qualifications to get a waiver of its DBE obligations, the waiver is invalid and thus so is the contract between CMS and Cardinal. This count was properly dismissed for much the same reason as the contract count.

¶ 55    A claim for declaratory judgment has always required "(1) a plaintiff with a legal tangible interest, (2) a defendant with an opposing interest, and (3) an actual controversy between the parties involving those interests." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 36. As we have just found, 3R has no tangible legal interest in this contract; it is neither a party to the contract nor a third-party beneficiary.

¶ 56    If, as explained above, a party like 3R has no standing to complain of a breach of that contract—because it has no legal interest in that contract—we fail to see how 3R would have a right to seek cancellation of that contract or, for that matter, any other right to affect that contract. 3R would argue that it's the DBE waiver it attacks as invalid, but that is a distinction without a difference; attacking the waiver incorporated into the contract is no different in substance or form than attacking the contract itself. If 3R has no tangible legal interest in that contract, it has no legal basis to *challenge* that contract, whatever that reason may be.

¶ 57    Coming at this a slightly different way but with the same underlying precepts, the court below and Cardinal claimed that this declaratory-judgment count was a thinly veiled claim for rescission, an equitable remedy that cancels a contract and restores the parties to their pre-contract status. See *Horwitz v. Sonnenschein Nath & Rosenthal*, 2018 IL App (1st) 161909, ¶ 33. And because 3R had no standing to assert a claim for breach of contract, they reasoned, it had no standing to raise the equivalent of a rescission claim to cancel that contract, either.

¶ 58    That is a different path to the same conclusion. A party that lacks standing to raise a contract-related claim cannot back-door that claim in via declaratory judgment; the tangible-legal-interest requirement dooms that plan. See *Western National Bank of Cicero v. Moenning*, 224 Ill. App. 3d 67, 75 (1991) (plaintiff, who assigned away 100% interest in land trust, "had no legal, tangible interest sufficient to sustain an action for declaratory relief" regarding terms of trust).

¶ 59    That is not to say a bidder can fraudulently obtain a DBE waiver with impunity. But the right to raise a contractual challenge belongs to the State, the other party to the contract. Any fraud or material misrepresentation by the vendor in its DBE utilization or its good-faith efforts at compliance "shall constitute a material breach of the contract and entitle the State agency ***

to declare a default, terminate the contract, or exercise those remedies provided for in the contract, at law, or in equity." 30 ILCS 575/8(2) (West 2022); see 44 Ill. Adm. Code 30.100 (2022) (providing State various remedies to punish vendor who violates its commitments regarding DBEs or good faith waiver). 3R can cite no statute or case law granting it a corresponding right.

¶ 60     We thus uphold the dismissal of count IV, the declaratory-judgment count.

¶ 61                              IV. Dismissal with Prejudice

¶ 62     3R claims that, even if it was proper to dismiss these counts, they should have been dismissed without prejudice, allowing 3R to amend them. But as the circuit court noted, the problem with these counts wasn't insufficient pleading; it was that they failed as a matter of law. 3R says that the court never stated that "amendment would be futile," but there is no such requirement. And in any event, the court all but said that without saying it. There was nothing 3R could have added in terms of factual specificity that would have saved these counts—notably, 3R makes no attempt to provide us examples of any such facts. We find no error here.

¶ 63                              V. Tortious Interference

¶ 64     We turn to 3R's claim for tortious interference with business expectancy. Plaintiff must plead (1) a reasonable expectancy of entering into a business relationship, (2) the defendant's knowledge of the expectancy, (3) the defendant's intentional, unjustified interference with that expectancy, and (4) damage to the plaintiff. *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 300-01 (2001); *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07 (1996).

¶ 65     The court dismissed the claim on the first element, finding that 3R lacked a valid business expectancy. 3R says the legal requirements of the BEP Act, along with its factual allegations, were sufficient to plead a cognizable expectancy. Under these unique allegations, we agree.

¶ 66    An actionable business expectancy is one that is "sufficiently concrete" to rise above the mere "hope of consummating a business relationship." *540 North Lake Shore Drive Condominium Ass'n v. MCZ Development Corp.*, 2025 IL App (1st) 230733, ¶ 38. And even when the possibility of consummating a transaction "is more than a hope, even when it has advanced to serious, good-faith negotiations, as long as either side is free to walk away for whatever reason, courts have been reluctant to enforce an expectation that the parties will ultimately consummate the relationship." *Id.* ¶ 41.

¶ 67    For example, it is not enough to be the "leading candidate" for a job; given the level of subjectivity involved, the choice of other candidates, and the possibility of cold feet, "[t]he hope of receiving a job offer is not a sufficient expectancy." *Anderson*, 172 Ill. 2d at 408.

¶ 68    In contrast, consider *Malatesta v. Leichter*, 186 Ill. App. 3d 602, 617 (1989), where the plaintiff wanted to purchase a car dealership and got as far as a buy-sell agreement with the current owner; he was only awaiting final approval from national headquarters. We found his expectation sufficiently concrete, as he was the only person with a buy-sell agreement with the current owner and was just one thumbs-up away from owning that franchise. *Id.* at 617-18.

¶ 69    Citing two federal decisions, Cardinal claims that courts have repeatedly rejected tortious-interference claims in circumstances involving bids. In *3DGS, LLC v. Chai Trust Co.*, 19 CV 7524, 2020 WL 7353406, at *9 (N.D. Ill. Dec. 15, 2020), the court found no reasonable expectancy during a competitive bidding process: "All of the bidders were competing with each other, and it cannot be the case that every potential bidder had a reasonable business expectancy ***." The court found insufficient facts to warrant an expectancy despite the fact "[t]hat 3DGS was the second lowest bidder and otherwise eligible for the contract." *Id.* The existence of "other

competitors" and lack of facts reinforcing the expectancy—such as a history of contracting with the company—made its chances of winning "far from a sure thing." *Id.*

¶ 70    In *United States ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 931 (N.D. Ill. 2015), the court found that a plaintiff in an anonymous-bidding process did not have a reasonable expectancy, as "all competitors theoretically had an equal expectancy of winning the contract." The court wrote that "a reasonable expectancy of entering into *a fair bidding process* *** is not the same as a reasonable expectancy of entering into *a business relationship*." *Id*. (emphasis in original). The court noted that its conclusion might be different "*if [the plaintiff] had been the only bidder*." *Id*. (emphasis added).

¶ 71    Here, however, the complaint alleges that 3R *was* the only game in town, Cardinal's only choice among potential DBE vendors. According to the complaint, Cardinal told the State that, of the nine DBE organizations Cardinal was required to contact, "five companies declined to submit a proposal ***, two were non-responsive, and one was rejected for failure to provide information." Simply put, the complaint alleged that, "[u]pon information and belief," 3R "was and is the only DBE organization qualified, willing, and able to perform subcontracting duties" under the contract between CMS and Cardinal.

¶ 72    And we reiterate from our earlier discussion that a bidder like Cardinal was under a mandatory duty to act in good faith to secure the inclusion of a DBE vendor. Cardinal was not "free to walk away for whatever reason" from discussions with 3R. *540 North Lake Shore Drive*, 2025 IL App (1st) 230733, ¶ 41. The BEP Act does not require ultimate inclusion of DBEs, but it does mandate a *good-faith effort* at inclusion.

¶ 73    So as alleged, we have none of the vagaries here of a typical bidding process. 3R has alleged that (1) it was fully qualified to perform this subcontract work and (2) it had literally no

competition from other DBEs. And Cardinal was under a mandatory duty to consider 3R in good faith. The complaint alleges an actionable business expectancy.

¶ 74    Cardinal's attempts to avoid this result are unpersuasive. Cardinal argues that the allegation that 3R was the sole qualified bidder was made on "information and belief" and thus was "conclusory." Cardinal cites no support for that proposition; the case law is to the contrary.

¶ 75    To be sure, " '[a]n allegation made on information and belief is not equivalent to an allegation of relevant fact' *** but at the pleading stage a plaintiff will not have the benefit of discovery tools" to confirm certain facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40 (quoting *Whitley v. Frazier,* 21 Ill. 2d 292, 294 (1961)). Thus, allegations based on information and belief "can 'survive dismissal if the plaintiff sufficiently pleads the factual basis informing his belief.' " *Community Home Physicians, LLC v. De La Mora*, 2026 IL App (3d) 250174-U, ¶ 62 (quoting *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 32).

¶ 76    Here, 3R pleaded that none of the other potential DBE vendors were viable candidates, and that this information was based on what Cardinal told the State (presumably in its utilization plan) in attempting to secure a waiver. 3R also pleaded that it was, itself, a qualified candidate. That was a sufficient foundation for 3R's allegation, on information and belief, that it was the sole qualified DBE vendor.

¶ 77    Cardinal also says that 3R "wrongly assumes it would have secured a subcontract but for Cardinal Health's alleged interference." That is an odd objection, given that we are at the pleading stage, taking all well-pleaded allegations as true. The complaint alleges that 3R stood ready and able to perform the subcontract, that Cardinal had a duty to negotiate in good faith with 3R, and that Cardinal did not negotiate in good faith, denying 3R the work for no valid reason and misrepresenting 3R's qualifications to the State to secure a DBE waiver.

¶ 78    Count III stated a viable claim for tortious interference with business expectancy.

¶ 79                                   CONCLUSION

¶ 80    The judgment of the circuit court is reversed as to count III. The judgment of the circuit court is otherwise affirmed. We remand for further proceedings.

¶ 81    Affirmed in part and reversed in part; cause remanded.

*3 R Health Care Products, Inc. v. Cardinal Health 110, LLC*, 2026 IL App (1st) 241911

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-L-1538; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| **Attorneys for Appellant:** | Garrett von Schaumburg and Michael Haeberle, of Patterson Law Firm, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | David M. Friebus and Maria A. Boelen, of Baker & Hostetler LLP, of Chicago, for appellee Cardinal Health 110, LLP. |
| | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Leigh J. Jahnig, Assistant Attorney General, of counsel), for other appellee. |